CARE AND PROTECTION OF ROBERT & others.

Suffolk. March 7, 1990. - July 16, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Minor*, Care and protection, Custody. *Parent and Child*, Care and protection of minor, Custody of minor. *Due Process of Law*, Care and protection of minor, Standard of proof.

Discussion of the factors, including the interests of the parties [58-62], the risk of error [62-63, 64-65], and the interest of the Commonwealth [65-66], applicable to a determination of the appropriate standard of proof to be complied with in the second hearing (the "seventy-two hour hearing") in a proceeding under G. L. c. 119, § 24, for care and protection of minor children.

Discussion of the "reasonable cause" standard of proof mandated in the provisions of G. L. c. 119, as applicable to threshold determinations with respect to the care and protection of minor children. [63-64]

The standard of proof in a "seventy-two hour hearing" (second hearing) in a care and protection proceeding under G. L. c. 119, § 24, consonant with due process considerations, is the "fair preponderance of the evidence." [66-68]

A care and protection proceeding was remanded for a determination whether a fair preponderance of the evidence adduced at the "seventy-two hour hearing" supported the judge's order granting temporary custody of eight minor children to the Department of Social Services. [68]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 3, 1989.

The case was heard by *O'Connor*, J.

*Michael F. Kilkelly* for the father.

*Countess C. Williams*, Assistant Attorney General, for Department of Social Services.

*Steven G. Doyle* (*Catherine Booth Correia* with him) for two minors.

*Rita E. Wahl* for five minors.

*Barbara M. Egan*, for a minor, joined in a brief.

*Arnold R. Rosenfeld, Jinanne S.J. Elder, Jacquelynne J. Bowman & Julie Mandell*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

*Marjorie Heins*, for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

*J. Walter Freiberg, III*, for Massachusetts Child Welfare League of America & others, amici curiae, submitted a brief.

LIACOS, C.J. In this case, the father of eight children named in a care and protection petition filed by the Department of Social Services (department) appeals from the judgment of a single justice of this court which dismissed the father's action for relief under G. L. c. 211, § 3 (1988 ed.), and for relief in the nature of certiorari. G. L. c. 249, § 4 (1988 ed.). The father had requested that the single justice invoke the general superintendence powers of this court to set aside an order of the Malden Division of the District Court Department which granted temporary custody of six of the father's children to the department.

In August, 1988, the department received a report pursuant to G. L. c. 119, § 51A,[1] which alleged that the eight children, who were living with their father at that time, were being neglected. The report alleged unsanitary living and

---

[1] General Laws c. 119, § 51A (1988 ed.), provides, in pertinent part, that: "Any physician, medical intern, hospital personnel engaged in the examination, care or treatment of persons, medical examiner, psychologist, emergency medical technician, dentist, nurse, chiropractor, podiatrist, osteopath, public or private school teacher, educational administrator, guidance or family counselor, day care worker or any person paid to care for or work with a child in any public or private facility, or home or program funded by the commonwealth or licensed pursuant to the provisions of chapter twenty-eight A, which provides day care or residential services to children, probation officer, clerk/magistrate of the district courts, social worker, foster parent, firefighter or policeman, who, in his professional capacity shall have reasonable cause to believe that a child under the age of eighteen years is suffering serious physical or emotional injury resulting from abuse inflicted upon him including sexual abuse, or from neglect, including malnutrition, or who is determined to be physically dependent upon an addictive drug at birth, shall immediately report such condition to the department by oral communication and by making a written report within forty-eight hours after such oral communication . . . ."

housing conditions at the father's home. In response to the report, the department undertook an investigation of the allegation of neglect. A department social worker determined that the father's house was not clean and that there was a shortage of sufficient sleeping quarters for the children. The department began working with the father to improve the children's living conditions.

Shortly thereafter, the department received a new § 51A report regarding the children. This report contained allegations that the children lacked adequate supervision and that some of the children had ingested alcohol. The department also received a report which alleged that the oldest child had engaged in sexual misconduct with one of the younger children.

On December 22, 1988, DSS filed a petition pursuant to G. L. c. 119, § 24 (1988 ed.), with the Malden District Court, alleging that the eight children were in need of care and protection.[2] Pursuant to G. L. c. 119, § 24, a judge of the District Court held an emergency hearing on the § 24 petition that same day. The judge determined that, based on the factual allegations contained in the § 51A reports described above, "there is reasonable cause to believe that the children are in immediate danger of serious harm by neglect, and that immediate removal of the children from the parents

---

[2]General Laws c. 119, § 24, provides, in pertinent part, that: "The Boston juvenile court, the Worcester juvenile court, the Bristol juvenile court, and the Springfield juvenile court or the juvenile sessions of any district court of the commonwealth, except the municipal and district courts located within the territorial limits of said juvenile courts, upon the petition of any person alleging on behalf of a child under the age of eighteen years within the jurisdiction of said court that said child is without: (a) necessary and proper physical or educational care and discipline or; (b) is growing up under conditions or circumstances damaging to the child's sound character development or; (c) who lacks proper attention of parent, guardian with care and custody, or custodian or; (d) whose parents, guardian or custodian are unwilling, incompetent or unavailable to provide any such care, discipline or attention may issue a precept to bring such child before said court, shall issue a notice to the department, and shall issue summonses to both parents of the child to show cause why the child should not be committed to the custody of the department or other appropriate order made."

at this time for 72 hours [is] necessary." The judge's conclusion did not apply to the oldest child, who was sixteen years old at the time of the hearing. The judge awarded the department temporary custody of the seven younger children. This custody was to continue until further hearings would be held on December 27, 1988, to determine whether custody of the seven children should remain with the department.[3]

The second hearing, commonly referred to as a "seventy-two hour hearing," was held on December 27, 1988, and January 3, 1989. Another judge of the District Court allowed the introduction of fifteen exhibits and heard the testimony of seven witnesses. On the basis of this presentation, the judge made the following findings. The father's house was not kept clean and lacked sufficient sleeping quarters for the children. Seven of the children were sleeping in two bunk beds. Three of the children had been found asleep on one level of one bunk bed, while another had been found sleeping on a living room chair. There was no privacy barrier between the female children and the sixteen year old male child, as to whom there had been allegations of sexual misconduct with a younger female child. Supervision of the younger children was left to the other children for the majority of the time. All of the children had serious tardiness and absenteeism problems at school, and one child had emotional problems and was in need of counseling and inpatient evaluation. This same child had claimed that she was forced to drink alcohol, and suffered an injury whose cause was unknown but whose existence had been corroborated by her school teacher. The father had a drinking problem and admitted that he was "overwhelmed" by having to care for eight children. The judge determined that these findings demonstrated "reasonable cause to believe that the children are in immediate danger of serious neglect and that immediate removal of the

---

[3]General Laws c. 119, § 24, requires such a hearing to be held within seventy-two hours of a decision to remove a child from his or her parents. In this case the seventy-two hour limit was exceeded, apparently due to scheduling conflicts between the parties. The father does not challenge the failure to meet the seventy-two hour requirement of G. L. c. 119, § 24.

children is necessary to protect them from such neglect." The judge ordered the department to retain custody of the children.

On February 3, 1989, the father filed his complaint with the single justice seeking relief from the judge's order. In his complaint, the father claimed that the judge's findings did not provide "reasonable cause" to believe that the children were in "immediate danger of serious neglect." The father also claimed that the judge's application of a "reasonable cause" standard of proof to the seventy-two hour hearing was erroneous because both the Federal and State Constitutions require the application of a "clear and convincing evidence" standard to a proceeding which can result in a parent's loss of custody of a child. Finally, the father claimed that the custody decision should be reversed because the judge failed to make certain findings required by G. L. c. 119, § 29C (1988 ed.).

On February 14, 1989, the single justice denied the father relief. On March 2, 1989, the father filed a notice of appeal to the full court from the decision of the single justice.[4]

1. *The standard of proof.* The father claims that the due process protections of the Constitutions of both the United States and the Commonwealth require the application of a "clear and convincing evidence" standard of proof to a seventy-two hour hearing. Therefore, he argues, the judge's application of a "reasonable cause" standard of proof to the seventy-two hour hearing in this case was error and requires reversal of the judge's decision to maintain custody of the children with the department.

---

[4]We granted the motion of the District Court to be designated a nominal party in this case. We also accepted separate briefs from: (1) the Attorney General's office on behalf of the Department of Social Services; (2) counsel for the third oldest child and the five youngest children, and; (3) counsel for the two oldest children. We acknowledge with appreciation the amicus briefs submitted by the Civil Liberties Union of Massachusetts, the Committee for Public Counsel Services and the Massachusetts Child Welfare League of America.

We begin our discussion with an examination of the language of G. L. c. 119, § 24, to determine which standard of proof, if any, the Legislature intended to be applied to a seventy-two hour hearing. General Laws c. 119, § 24, provides a three-part process by which a court may transfer custody of a child from that child's parent to DSS. Section 24 states that on the petition of any person alleging that a child is without: "(a) necessary and proper physical or educational care and discipline; or (b) is growing up under conditions or circumstances damaging to the child's sound character development; or (c) who lacks proper attention of parent, guardian with care and custody, or custodian; or (d) whose parents, guardian or custodian are unwilling, incompetent or unavailable to provide any such care," the court shall issue a notice to the department and summonses to the child's parents, and hold a hearing allowing for a presentation of facts as to the condition of the child. Due to the need for expedition in this type of proceeding, the emergency hearing, much like a hearing for a temporary restraining order, may be held ex parte. See, e.g., G. L. c. 209A, § 4 (1988 ed.). If, after this hearing, the court determines that there is "reasonable cause to believe that the child is suffering from serious abuse or neglect, or is in immediate danger of serious abuse or neglect, and that immediate removal of the child is necessary to protect the child from serious abuse or neglect, the court may issue an emergency order transferring custody of a child under this section to the department or to a licensed child care agency or individual described in clause (2) of section twenty-six." *Id.* Prior to the expiration of seventy-two hours from the time of the transfer of custody, the court must hold a second hearing, the "seventy-two hour hearing," to "determine whether such temporary custody should continue until a hearing on the merits of the petition for care and protection [the third hearing] is concluded before [the] court." *Id.* Prior to the care and protection hearing, the court must order a qualified person to investigate the child's situation. G. L. c. 119, § 24. The Commentary to Standard 4:02 of the Standards of Judicial Practice of the District Court Depart-

ment of the Trial Court: Care and Protection Proceedings
(1980), identifies four to six weeks as an appropriate amount
of time in which to complete such an investigation.

Section 24 is explicit in its provision of a "reasonable
cause" standard of proof for the initial emergency hearing.
The father does not challenge the adequacy of a "reasonable
cause" standard at this stage of the proceedings. Further-
more, while § 24 is silent as to the standard of proof to be
applied to the hearing on the merits of the petition for care
and protection (the third part of the process), it has been
held by this court that any decision in this third phase must
be based on clear and convincing evidence. See *Care & Pro-
tection of Stephen*, 401 Mass. 144, 150 (1987); *Custody of a
Minor (No. 2)*, 392 Mass. 719, 725 (1984); *Custody of a
Minor*, 389 Mass. 755, 766-767 (1983).

Neither § 24 nor our previous decisions shed any light on
the standard of proof which is to be applied to the seventy-
two hour hearing. This court has held that where no standard
of proof is provided for a proceeding which is required by
statute, due process demands application of a standard ap-
propriate to the "particular situation" which is presented.
*Andrews, petitioner*, 368 Mass. 468, 486 (1975). " 'The
rights to conceive and to raise one's children' are 'essential
. . . basic civil rights of man . . . far more precious . . .
than property rights.' " *Department of Pub. Welfare* v.
*J.K.B.*, 379 Mass. 1, 3 (1979), quoting *Stanley* v. *Illinois*,
405 U.S. 645, 651 (1972). "[The] loss of a child may be as
onerous a penalty [to the parents] as the deprivation of the
parents' freedom." *Department of Pub. Welfare, supra*,
quoting *Custody of a Minor (No. 1)*, 377 Mass. 876, 884
(1979). Accordingly, before the State may deprive a parent
of the custody of a child, "the requirements of due process
must be met." *Id.* "Minimum due process varies with con-
text." *Spence* v. *Gormley*, 387 Mass. 258, 274 (1982).

When making the determination as to what standard of
proof is appropriate in a particular context, both this court
and the United States Supreme Court have utilized the due
process analysis contained in *Mathews* v. *Eldridge*, 424 U.S.

319 (1976). See *Spence* v. *Gormley, supra* at 274-277; *Santosky* v. *Kramer*, 455 U.S. 745, 759-768 (1982). *Mathews* v. *Eldridge, supra* at 335, identified three distinct factors whose consideration was required by "the specific dictates of due process": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." See *Commonwealth* v. *Barboza*, 387 Mass. 105, 112, cert. denied, 459 U.S. 1020 (1982) ("In determining what process is due [under the State Constitution] we have stated that this court 'must balance the interests of the individual affected, the risk of erroneous deprivation of those interests and the government's interest in the efficient and economic administration of its affairs' "), quoting *Thompson* v. *Commonwealth*, 386 Mass. 811, 817 (1982). We examine each of these three factors to determine whether the judge's decision to apply a "reasonable cause" standard of proof to the seventy-two hour hearing met the requirements of due process, and if not, what standard of proof should be applied.

a. *The private interests.* A seventy-two hour hearing implicates at least three significant private interests. Most obviously, the hearing implicates the interest of parents in their relationship with their children. And, as a necessary corollary to the parents' interest in their relationship with their child, a child's interest in the relationship with his or her family is also implicated in a seventy-two hour hearing. See *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 588 (1981) ("there exists a 'substantial and impressive consensus' among experts in the field of child development that 'disruption of the parent child relationship carries significant risks' for the child"). Finally, because a seventy-two hour hearing occurs only after "reasonable cause" has been found to believe that immediate re-

moval of a child from his or her parents is necessary to protect the child from "serious abuse or neglect," a seventy-two hour hearing implicates the child's right to be free from abusive or neglectful behavior. We must consider the significance of each of these three interests in relation to the appropriate standard of proof to apply to a seventy-two hour hearing.

"The interest of parents in their relationship with their children has been deemed fundamental, and is constitutionally protected." *Department of Pub. Welfare v. J.K.B., supra* at 3, and cases cited. See *Custody of Two Minors*, 396 Mass. 610, 617 (1986). However, notwithstanding the precious character of a parent's relationship with his or her children, the parent's interest is not immune from State intervention. "[T]he right of parents to be free from intrusion by the State in matters of childrearing is not absolute." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, supra* at 587. If a person is found to be an unfit parent, the State need not suffer custody of a neglected or abused child to remain with that person. "The State as parens patriae may act to protect minor children from serious physical or emotional harm. In some instances this may require a partial or complete severance of the parent-child relationship." *Id.* at 587-588.

A seventy-two hour hearing may, at most, deprive a parent of the custody of his or her child only temporarily. By this statement, we do not intend to belittle the anguish which can accompany even the shortest removal of a child from a parent's custody. Nevertheless, for purposes of due process analysis, a significant consideration is "the permanency of the threatened loss." *Santosky v. Kramer, supra* at 758. A decision to continue the removal of a child, pursuant to a seventy-two hour hearing, is reversible; parental custody is not irretrievably lost. Compare *id.* at 759. The fact that a parent has a less significant interest in a reversible, temporary deprivation of a child's custody than where a permanent deprivation of custody is at issue indicates that a standard of proof

less demanding than the "clear and convincing evidence" standard proposed by the father may be appropriate.[5]

The other interests involved in a seventy-two hour hearing are the child's interests in the integrity of the family and in freedom from abusive or neglectful behavior on the part of the child's parents. In the context of a seventy-two hour hearing, these two interests become so intertwined as to be almost inseparable; the extent of a child's interest in the integrity of the family will fluctuate extensively according to the risk of abuse offered the child by his or her parents. " 'At common law it was presumed that a child's welfare is best served in the care and custody of its parents', . . . but that is not the case if the parents 'have grievous shortcomings or handicaps that would put the child's welfare in the family milieu much at hazard' . . . ." *Custody of a Minor*, 389

---

[5]The father and several amici point to statistics gathered by amicus Committee for Public Counsel Services which suggest that it often takes over one year to adjudicate the merits of a care and protection case in which custody has been taken from the parents. Committee for Public Counsel Services Family Law Advocacy Project Annual Report, August 1, 1988 - July 31, 1989, at 17. Furthermore, they direct our attention to cases in which this court has examined care and protection proceedings which resulted in a grant of temporary, rather than permanent, custody to the department. See *Care & Protection of Stephen*, 401 Mass. 144, 145, 154 (1987) (pursuant to a care and protection proceeding judge grants the department permanent custody of two children and temporary custody of two other children).

They argue that, because a seventy-two hour hearing can result in the deprivation of custody of a child for over one year, and because care and protection proceedings may result in a grant of only temporary custody, the impact of a seventy-two hour hearing and a care and protection proceeding may not be materially different. Therefore, they suggest, this court should apply the same "clear and convincing evidence" standard of proof to seventy-two hour hearings as is required for care and protection proceedings.

While we are aware of the lengthy delays that often occur in care and protection proceedings, the fact that a parent may be deprived of the custody of his or her child for over one year due to a seventy-two hour hearing does not negate the fact that a permanent deprivation of custody can never occur as the result of a seventy-two hour hearing. In the third phase of a care and protection proceeding, however, the possibility of a permanent deprivation of custody cannot be ruled out. We find this distinction to be significant in the circumstances of this case.

Mass. 755, 766 (1983), quoting *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, supra* at 590. See G. L. c. 119, § 1 (1988 ed.) ("It is hereby declared to be the policy of this commonwealth to direct its efforts, first, to the strengthening and encouragement of family life for the protection and care of children . . . . The purpose of this chapter is to insure that the children of the commonwealth are protected against the harmful effects resulting from the absence, inability, inadequacy or destructive behavior of parents . . .").

A child's interest in the integrity of his or her family, much like the equivalent interest of the parent, is not absolute. The strength of this interest must be weighed in light of the ability or willingness of the parent to further the best interests of the child, or at least to refrain from engaging in behavior which is detrimental to the child's welfare. The child's interest in freedom from abusive or neglectful behavior, however, is absolute. In no situation may a child be legitimately subjected to abusive or neglectful conditions. Accordingly, in the context of a seventy-two hour hearing, where no permanent separation of a child from his or her parents is threatened, the child's interest in freedom from abuse and neglect takes precedence over the child's interest in family integrity. Because a seventy-two hour hearing is predicated on a determination that "reasonable cause" exists to believe a child is suffering, or is in danger of suffering, "serious abuse or neglect," and because the child's interest in freedom from neglect or abuse is absolute, a standard of proof which is less demanding than "clear and convincing evidence," and thereby affords more protection to the child's safety interest, appears warranted in a seventy-two hour hearing.

b. *Risk of error.* The second factor we must consider is the risk of an erroneous deprivation of the private interests involved in the proceedings and the probable value of additional procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). If the risk of an erroneous deprivation is high, and additional procedural safeguards such as a more

demanding standard of proof would be effective in lessening that risk, then the due process balance becomes weighted toward the adoption of a more stringent standard of proof. See *Santosky* v. *Kramer, supra* at 764-766.

The judge below concluded that G. L. c. 119, § 24, required the application of a "reasonable cause" standard of proof to the seventy-two hour hearing. Unfortunately, c. 119 does not provide any definition of "reasonable cause" or any guidelines for its application. However, "reasonable cause" is utilized as a standard in other parts of c. 119. From the context of these other uses, it appears that the Legislature intended "reasonable cause" to serve a threshold function, thereby implying a relatively low degree of accuracy.

For example, in § 51A of c. 119, medical workers, teachers and child care personnel are required to file a report with DSS if they "have reasonable cause to believe that a child under the age of eighteen years is suffering serious physical or emotional injury resulting from abuse . . . or . . . neglect." See *Parents of Two Minors* v. *Bristol Div. of the Juvenile Court Dep't*, 397 Mass. 846, 851 (1986). This "reasonable cause" standard must be applied even though no courts or agencies of the Commonwealth are involved in the examination and analysis of the relevant facts.

In the context of § 51A, " 'reasonable cause to believe' has been interpreted to mean 'known or suspected instances of child abuse and neglect.' " *April K.* v. *Boston Children's Serv. Ass'n*, 581 F. Supp. 711, 713 (D. Mass. 1984), quoting Rep. A.G. Pub. Doc. No. 12, at 157 (June 16, 1975). See *Mattingly* v. *Casey*, 24 Mass. App. Ct. 452, 456 (1987). Therefore, a presentation of facts which create a suspicion of child abuse is sufficient to trigger the requirements of § 51A. On the receipt of a report pursuant to § 51A, DSS must undertake its own investigation of the situation to determine whether further action is warranted. G. L. c. 119, § 51B (1988 ed.). "Reasonable cause," as it is used in § 51A, clearly serves a threshold function.

A "reasonable cause" standard is also utilized in a preliminary fashion in G. L. c. 119, § 51B. Ordinarily, under § 51B,

the department must commence an investigation within two working days of its receipt of a § 51A report and complete the investigation within ten calendar days. G. L. c. 119, § 51B (1). However, "if the department has reasonable cause to believe the child's health or safety is in immediate danger from further abuse and neglect," the department must begin its investigation within two hours of the receipt of the report and must complete the investigation within twenty-four hours. *Id.* Clearly, the Legislature's allowance of two hours from the time of receipt of a § 51A report, within which the department must determine whether "reasonable cause" exists, exemplifies an intention on the part of the Legislature that "reasonable cause" not be understood in an overly technical fashion.

"[I]n the absence of a plain contrary indication, a word used in one part of a statute in a definite sense should be given the same meaning in another part of the same statute." *Plymouth County Nuclear Information Comm.* v. *Energy Facilities Siting Council*, 374 Mass. 236, 240 (1978). In line with this rule of statutory construction, we must assume that the Legislature intended the phrase "reasonable cause" to be used throughout c. 119 in the same manner as it is used in §§ 51A and 51B; that is, as a threshold determination. Our conclusion on this point finds support in the fact that the only other explicit mandate of a "reasonable cause" standard in c. 119 is for the initial emergency hearing authorized by § 24. The emergency hearing cannot long stand of its own accord; the determination made at the emergency hearing must be accepted or rejected within three days at the seventy-two hour hearing. G. L. 119, § 24.

A threshold determination such as that presented by the initial emergency hearing under § 24 necessarily anticipates that further proceedings regarding the particular situation will be held. Any errors which arise in the initial hearing can be discovered and corrected in subsequent proceedings, such as the seventy-two hour hearing and the hearing on the merits of the care and protection petition. The initial hearing, in the interest of expediency, need not and most likely cannot

be so exhaustive in its examination of the facts as are subsequent proceedings. Therefore, it is inevitable that a threshold determination is more likely to be erroneous than an intermediate or final determination which utilizes a more rigorous review process.

The judge below, by applying the threshold standard of "reasonable cause" to the seventy-two hour hearing, created a greater risk of an erroneous deprivation of custody than would have been present in the face of the "clear and convincing evidence" standard which applies to a proceeding on the merits of a care and protection petition. Accordingly, in line with the second factor of the *Mathews* v. *Eldridge* due process analysis, we must conclude that a "reasonable cause" standard creates a not insubstantial risk of an erroneous deprivation of the private interests involved in a seventy-two hour hearing, and that the application of a more demanding standard would serve to lessen the risk of error.[6]

c. *State interest.* Finally, we must examine the additional factor of the Commonwealth's interest in a seventy-two hour hearing, including the burdens that a more demanding standard of proof would create for the Commonwealth. The Commonwealth, as parens patriae, has a strong interest in the welfare of the children of the Commonwealth. See *Lassiter* v. *Department of Social Servs. of Durham County, N.C.*, 452 U.S. 18, 27 (1981) ("the State has an urgent interest in the welfare of [a] child"); *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587 (1981) ("The State as parens patriae may act to protect minor children from serious physical or emotional harm"). "Because the interest of [a] child is thought

---

[6]The department argues that application of a less demanding standard of proof such as "reasonable cause" serves to lessen the risk of an erroneous deprivation of the child's interest in freedom from abuse or neglect because any risk of error will tend to lead to the temporary award of custody to the department, where the child's safety will be protected. This argument ignores the fact that, given the same set of facts, a more rigorous standard of proof is more likely to produce an accurate conclusion than a less rigorous standard. This argument also ignores completely the child's interest in the integrity of his or her family.

to be best served in the stable, continuous environment of his
own family, . . . State intervention in the parent-child rela-
tionship is justified only when parents appear unable to pro-
vide for their children's care and protection." (Citations
omitted.) *Custody of a Minor (No. 1)*, 377 Mass. 876, 882
(1979). The Commonwealth's interest, therefore, extends ini-
tially to the maintenance of a stable family environment and,
if this is not present, to the provision of adequate care and
protection for the child. We note that these interests of the
Commonwealth are in direct alignment with the interests of
the child.

The administrative burden presented to the Common-
wealth by a requirement of a more stringent standard of
proof in a seventy-two hour hearing would not be unreasona-
ble. We trust that in the three days preceding a seventy-two
hour hearing, the department would exert equal effort to dis-
cover relevant facts regarding a child's condition regardless
of the standard by which the relevant facts will be evaluated
by the court. However, the Commonwealth's interest in the
welfare of the child might suffer unnecessarily if too high a
standard of proof were required. For example, in *Custody of
a Minor (No. 1)*, *supra* at 885, we stated that, "if we were,
for the sake of simplicity, to adopt a '[beyond a] reasonable
doubt' test in cases involving parental neglect, we fear that
we might overly jeopardize the welfare of the child." There-
fore, consideration of the Commonwealth's interests shows
that the adoption of a very rigorous standard of proof in a
seventy-two hour hearing might put at serious risk the Com-
monwealth's and the child's interests in protecting children
from abusive or neglectful parents. In light of this fact, an
intermediate standard of review appears more appropriate to
the circumstances of a seventy-two hour hearing.

d. *Standard of proof required by due process.* "[A] stan-
dard of proof represents an attempt to instruct the factfinder
concerning the degree of confidence our society thinks he
should have in the correctness of factual conclusions for a
particular type of adjudication. Although the phrases [used
to describe a standard of proof] are quantitatively imprecise,

they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring). See *Commonwealth* v. *Nassar*, 380 Mass. 908, 916 n.11 (1980).

As we have noted, all the parties involved in a seventy-two hour hearing, including the parent, the child and the State, have a strong interest in maintaining the constitutionally protected interest of familial integrity. Seventy-two hour hearings can often result in the removal of custody from parents for periods exceeding one year. See note 5, *supra*. The impact of such a separation between a parent and child, while theoretically a temporary separation pending a care and protection proceeding on the merits, cannot be dismissed lightly. In the circumstances of this case, the judge's determination that "reasonable cause" existed to believe that a child was in danger of abuse or neglect leaves it unclear whether the judge had a sufficient degree of certainty in his decision to warrant such a potentially devastating interference in a family's existence.

A requirement that a "clear and convincing evidence" standard of proof be applied to a seventy-two hour hearing, however, would fail to recognize the abbreviated nature of a seventy-two hour hearing, and would provide insufficient protection to the child's interest in freedom from abuse or neglect. That a child's interest in safety might conflict with the interest in remaining under the care of his or her parents is indeed a tragedy, but it is a fact we may not choose to ignore. To require the presentation of "clear and convincing evidence" of child abuse or neglect in a seventy-two hour hearing held only three days after the decision to transfer custody is made would be to put a child at significant risk of being erroneously returned to abusive or neglectful parents. Such a standard of proof would be inconsistent with the Legislature's intention that a determination reached at a seventy-two hour hearing would serve an intermediary function between an emergency determination and the more permanent decision reached at a care and protection proceeding,

which must meet the "clear and convincing evidence" standard. See *Care & Protection of Stephen*, 401 Mass. 144, 150 (1987). A less demanding standard of proof is required.

Accordingly, we hold today that a decision to maintain a removal from parental custody reached at a seventy-two hour hearing held pursuant to G. L. c. 119, § 24, must meet the intermediate standard of a "fair preponderance of the evidence." See *In re Juvenile Appeal*, 189 Conn. 276, 300 (1983). It is our view that this standard of proof provides sufficient consideration for the interests of all those involved in a seventy-two hour hearing, and protects those interests from erroneous deprivation to a degree consistent with the abbreviated nature of such a hearing.[7] See *id.* The judge's decision to apply a "reasonable cause" standard of proof to the seventy-two hour hearing in this case was improper. A new seventy-two hour hearing determination must be made in the District Court, based on a "fair preponderance of the evidence."[8]

2. *Conclusion.* Our decision makes unnecessary at this stage of the proceedings any consideration of the father's other claims. This case is remanded to the single justice for

---

[7]We consider a seventy-two hour hearing to be analogous to the hearing accorded a request for a preliminary injunction. In both cases, parties are seeking a temporary, but significant, stabilization of the factual situation at issue. At a preliminary injunction hearing, "the task for the motion judge is to balance the risk of irreparable harm to the plaintiff and the defendant 'in light of [each] party's chance of success on the merits.' " *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 710 (1990), quoting *Packaging Indus. Group* v. *Cheney*, 380 Mass. 609, 617 (1980). The standard of proof we require today at seventy-two hour hearings serves essentially the same function as the standard applied at a hearing for a preliminary injunction.

[8]The judge need only consider the evidence presented at the previous seventy-two hour hearing in light of a "fair preponderance of the evidence" standard of proof. He need not accept new evidence except in his sound discretion. If a final hearing has occurred and has resulted in a determination by clear and convincing evidence that the custody of the children should be given to the department (or another) the need for another hearing may be moot.

entry of a judgment directing the District Court to proceed in accordance with this opinion.

*So ordered.*