CARE AND PROTECTION OF LILLIAN & others.[1]

Suffolk. September 9, 2005. - November 18, 2005.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Parent and Child,* Care and protection of minor, Custody. *Minor,* Care and protection, Temporary custody. *Adoption,* Care and protection. *Evidence,* Child custody proceeding. *Statute,* Construction.

This court concluded that a petition under G. L. c. 119, § 24, to temporarily transfer custody of a child to the Department of Social Services (department) in an emergency is sufficient if it contains allegations asserting specific facts, based on personal knowledge or information and belief, that fall within the statute's enumerated concerns [337-340]; further, this court concluded that where a judge denies such a petition after determining that the child is in no immediate risk of harm requiring prompt removal, but has not conducted a hearing to determine whether the department should be awarded temporary custody, the petitioner may proceed to a hearing for temporary custody pursuant to G. L. c. 119, § 25 [340-342].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 7, 2005.

The case was reported by *Ireland, J.*

*Mark A. Papirio* (*Michael T. Spadea* with him) for the mother.

*Pamela J. Szmyt Hastings,* Committee for Public Counsel Services (*Henry Porter* with her) for the father.

*Virginia A. Peel,* Special Assistant Attorney General, for Department of Social Services.

*Dorothy Meyer Storrow* for Karen & others.

*John T. Ouderkirk, Jr.,* for Lillian, was present but did not argue.

IRELAND, J. The children's mother filed a petition pursuant to G. L. c. 211, § 3, challenging a Juvenile Court judge's denial of her motion to dismiss an emergency care and protection petition. A single justice of this court reserved and reported this matter

---

[1]Karen, Troy, and Kirsten (pseudonyms).

to the full court to consider two issues concerning the operation
of G. L. c. 119, § 24, the statutory provision that permits a
judge temporarily to transfer custody of a child to the Depart-
ment of Social Services (department) in an emergency: (1) the
sufficiency of a petition for care and protection; and (2) whether
further proceedings for temporary custody are available to a
petitioner if a judge denies an emergency transfer of custody
after determining that a child is in no immediate risk of harm
requiring immediate removal. We conclude that a petition is
sufficient if it contains allegations asserting specific facts, based
on personal knowledge or information and belief, that fall within
the statute's enumerated concerns. We also conclude that if a
judge denies an emergency petition because the child is in no
immediate risk of harm requiring immediate removal, but has
not conducted a hearing to determine whether the department[2]
should be awarded temporary custody, the petitioner may
proceed to a hearing for temporary custody pursuant to G. L.
c. 119, § 25. In this case, the petition was sufficient and the
judge properly scheduled a hearing for temporary custody.

   *Facts and procedural background.* The parties have agreed to
the basic facts and procedural background, which we supple-
ment from the record as necessary to our discussion of the
issues.

   Four of the mother's five children were living with her in
April, 2005. The department first became involved with the
family in 1997. According to the department's petition, there
have been eighteen reports of neglect and abuse since that time.
Of those reports, the parties agree that since April, 2003, eleven
reports of abuse and neglect have been filed on behalf of the
children, six of which were supported on grounds of neglect,
including the most recent filing in April, 2005. The department
filed a care and protection petition in May, 2005, alleging that
Lillian, born in 1996, had been absent from school thirty-four
times and was tardy forty-seven times. The petition also alleged
that Karen had fifty-one absences from kindergarten and was
tardy twenty times. It also alleged that all four children were
overdue for both immunizations and "well child visits."

---

[2]Under the statute, a judge may award temporary custody to a party other
than the department. G. L. c. 119, §§ 24, 25.

Moreover, the petition alleged that the mother, diagnosed with attention deficit disorder, anxiety, posttraumatic stress disorder, and depression, had ceased taking medication and engaging in individual therapy.

The department requested an emergency ex parte hearing for immediate removal of the children.[3] G. L. c. 119, § 24. At the May 24 hearing, the judge denied the request for removal but ordered a preliminary hearing concerning temporary custody to be held two days later, which was delayed. The judge denied the mother's motion to dismiss the department's petition after a hearing on June 2. The preliminary hearing was rescheduled to June 9. The mother appealed to the county court and the single justice who ordered the preliminary hearing stayed until further order of the court.[4]

*Discussion.* 1. *Statutory scheme.* The purpose of G. L. c. 119 is to protect children "against the harmful effects resulting from the absence, inability, inadequacy or destructive behavior of parents or parent substitutes." G. L. c. 119, § 1. A petition for care and protection may be filed when a person alleges that a child's situation falls under one of four concerns enumerated in G. L. c. 119, § 24. When such a petition is filed, the first part of G. L. c. 119, § 24, also sets forth the procedures whereby a precept issues to bring the child before the court, the department is notified, and both parents receive a summons and notice. *Id.*[5]

---

[3]The record indicates that the mother was outside the court room while the emergency hearing was being held. It is not clear why she was not at the hearing itself.

[4]Kirsten's father filed a motion to intervene in the county court, which was allowed. Lillian's father filed a memorandum in support of the mother's petition in the county court and is the only father to have filed a brief with this court.

[5]General Laws c. 119, § 24, states, in pertinent part:

"The divisions of the juvenile court department, upon the petition under oath of a person alleging on behalf of a child under the age of 18 within the jurisdiction of the court that the child: (*a*) is without necessary and proper physical or educational care and discipline; (*b*) is growing up under conditions or circumstances damaging to the child's sound character development; (*c*) lacks proper attention of the parent, guardian with care and custody or custodian; or (*d*) has a parent, guardian or custodian who is unwilling, incompetent or unavailable to provide any such care, discipline or attention, may issue a precept to bring the child before the court, shall issue a notice to the department and summonses

The second part of G. L. c. 119, § 24,[6] and G. L. c. 119, § 25,[7] concern the authority of the Juvenile Court to order the temporary removal of a child from his or her parents, until a hearing or trial adjudicating the merits of the care and protection petition pursuant to G. L. c. 119, § 26. See *Care & Protection of Manuel*, 428 Mass. 527, 529, 531 (1998). As part of the temporary custody hearing a child or parent may offer the names of individuals who could become the child's temporary legal custodian. *Id.* at 529. If a child is ultimately determined to be in need of care and protection, G. L. c. 119, § 26, second par. (1), contemplates that a child may remain in the parent's custody.

to both parents of the child to show cause why the child should not be committed to the custody of the department or that any other appropriate order should not be made."

[6]The second part of G. L. c. 119, § 24, states:

"If, after a recitation under oath by the petitioner of the facts of the condition of the child who is the subject of the petition, the court is satisfied that there is reasonable cause to believe that the child is suffering from serious abuse or neglect or is in immediate danger of serious abuse or neglect and that immediate removal of the child is necessary to protect the child from serious abuse or neglect, the court may issue an emergency order transferring custody of the child to the department . . . . A transfer of custody shall be for a period not exceeding 72 hours except that upon the entry of the order, notice shall be given to either or both parents, guardian with care and custody or other custodian to appear before the court. The court shall, at that time, determine whether temporary custody shall continue until a hearing on the merits of the petition for care and protection is concluded before the court. The court shall also consider the provisions of [G. L. c. 119, § 29C,] and shall make the written certification and determinations required by said [§] 29C."

[7]General Laws c. 119, § 25, states:

"When such child is taken into custody upon said precept and brought before said court, the court may then hear said petition, or said petition may be continued to a time fixed for hearing, and the court may allow the child to be placed in the care of some suitable person or licensed agency providing foster care for children or the child may be committed to the custody of the department, pending a hearing on said petition.

"If the court commits a child to the custody of the department, the court shall consider the provisions of [§] 29C and shall make the written certification and determinations required by said [§] 29C."

2. *Sufficiency of the petition.* a. *Petitions in general.* The person filing a care and protection petition must allege "under oath" that a child: "(*a*) is without necessary and proper physical or educational care and discipline; (*b*) is growing up under conditions or circumstances damaging to the child's sound character development; (*c*) lacks proper attention of the parent, guardian with care and custody or custodian; or (*d*) has a parent, guardian or custodian who is unwilling, incompetent or unavailable to provide any such care, discipline or attention . . . ." G. L. c. 119, § 24.

We conclude, and all parties agree, that the petition must allege facts that pertain to at least one of the four enumerated grounds. However, the statute is silent concerning the standard to be used by the Juvenile Court to evaluate the sufficiency of the pleadings. The children and parents urge us to require heightened scrutiny, particularly given the liberty interests at stake.[8] See *Care & Protection of Robert*, 408 Mass. 52, 58-60 (1990) (parents have fundamental interest in custody of their children). We conclude that a petition is sufficient if it alleges specific facts, based on personal knowledge or on information and belief, that, if true, fall within at least one of those four enumerated concerns.[9] This conclusion is in keeping with the statute's purpose of protecting children from the harmful effects of their parents' destructive behavior. *Custody of Tracy*, 31 Mass. App. Ct. 481, 485 (1991). In addition, loss of custody, even emergency or temporary loss of custody, is not a predetermined outcome of proceedings under either § 24, 25,

---

[8]Lillian argues that the facts alleged should be able to survive the fair preponderance of the evidence standard. Her mother and father argue that the petitioner must allege more than is required by the rules of civil procedure. They argue that at a minimum, the petition should state how the alleged conduct of the caregiver puts the child at risk and be substantive, given the liberty interests at stake. The younger three children argue that the standard should be that the petition must allege facts that, if proved, would demonstrate that the parents are currently unfit.

[9]We conclude, and no party disputes, that the first part of G. L. c. 119, § 24, is jurisdictional, and therefore, our conclusion about the sufficiency of the petition applies to any petition brought seeking care and protection of a child.

or 26.[10] See *Care & Protection of Manuel, supra* at 533 (result of § 24 emergency hearing could be "no emergency custody order or emergency removal of the child"). See also R.L. Ireland, Juvenile Law § 111 (1993) (parents may retain physical custody of child where department awarded legal custody); *Care & Protection of Three Minors*, 392 Mass. 704, 708 (1984) (legal custody remained with department, but physical custody returned to mother, pursuant to § 24); *Custody of a Minor*, 375 Mass. 733, 736, 752 (1978) (under § 24 parents retained physical custody of child but legal custody removed so that child could receive life-saving medical treatment); G. L. c. 119, § 1 (one purpose of statute is "the strengthening and encouragement of family life"). The petition is only a vehicle to put the parties on notice that a child is alleged to be in need of care and protection, and to begin a process whereby a court will hold a hearing on the issue.[11] See *Care & Protection of Robert, supra* at 62 (child has absolute interest in freedom from neglect or abuse). The hearing required under both § 24 (within seventy-two hours of an emergency removal of children) and § 25 is the mechanism that strikes the requisite balance between protecting the child's absolute liberty right to be free from abuse or neglect and the parents' liberty interest in keeping their children. See *Care & Protection of Manuel, supra* at 534 (fair preponderance of evidence standard governs temporary custody orders pursuant to G. L. c. 119, §§ 24 and 25). See also *Care & Protection of Robert, supra* at 60 (parents' liberty interest in maintaining custody of children not absolute; State may intervene if parents unfit).

b. *Petition in this case.* Lillian's mother and father argue that

---

[10]General Laws c. 119, § 26, expressly states that even children ultimately declared in need of care and protection may stay with their parents, subject to limitations or supervision. In addition, a judge may simply order parents to provide medical or dental care. Moreover, even if a parent loses custody of a child, the parent may petition the court every six months for a review and redetermination of that decision. See *Care & Protection of Erin*, 443 Mass. 567, 570 (2005); *Custody of a Minor (No. 2)*, 378 Mass. 712, 718 n.2 (1979).

[11]In the case of an ex parte emergency removal pursuant to G. L. c. 119, § 24, notice is of the allegations of abuse or neglect and of the hearing on temporary custody (within seventy-two hours of the child's removal).

the petition in this case was insufficient.[12] Lillian argues that the petition was sufficient in this case as to her. The three younger children argue that the petition was sufficient as to Lillian, but not as to them.

The department's petition alleges that a mandated reporter reported that Lillian missed thirty-four days of school (and the report was supported). That alone is sufficient to fall under the "necessary and proper . . . educational care and discipline" concern in § 24. School attendance requirements are applicable to care and protection cases. See *Care & Protection of Charles*, 399 Mass. 324, 329-330, 340 (1987).

The three younger children argue, inter alia, that the petition was insufficient as to them because each of the allegations raised, standing alone, would be insufficient to survive a motion to dismiss.[13] The petition alleges that the department has been involved with the family since 1997, that there had been some reported abuse in the past (children being hit with a broomstick; three and one-half year old Troy being locked in the basement as punishment). As discussed above, the parties agree that six of eleven reports filed on behalf of the children since April, 2003, were supported for neglect. There was a supported report for neglect from a mandated reporter in April, 2005, that the home was unsanitary, that Kirsten was unsupervised and had scratches and burns on her arm, and that the children were "behind medically." The petition named a physician who was concerned because the mother made appointments for immunizations and checkups but then canceled them. The department also

[12]The mother argues, in essence, that even if the allegations are true, they do not rise to the level of concern outlined in the statute. Lillian's father states that the petition fails to make a connection between the mother's behavior and its impact on any of the children.

[13]The younger children argue that the petition cites to abuse that is over one year old, contains no allegation of current abuse, cites one incident of domestic violence that is moot because the husband has moved out, fails to allege that there is a nexus between the mother's mental health problems and her ability to care for the children, contains no allegation that the children have been denied medical care when sick or injured, fails to allege that the fathers are unfit, and improperly alleges that school attendance applies to them because they are too young to be required to attend school. They also argue that some incidents were singular and occurred more than one year before the petition, and therefore the department could not establish a pattern of abuse or current abuse.

mentioned that the mother was no longer either attending individual therapy sessions or taking medication for her mental health problems.[14]

We conclude that if true, these allegations (and the reasonable inferences drawn therefrom) would implicate at least whether the younger children were "without necessary and proper physical . . . care" pursuant to § 24. In making a decision concerning the *removal* of the children, a "court need not wait until it is presented with a maltreated child before it decides the necessity of 'care and protection.' " *Custody of a Minor (No. 1)*, 377 Mass. 876, 882-883 (1979). Certainly, the allegations here are sufficient to begin a proceeding to determine whether the mother is protecting the children's absolute right to be free from abuse or neglect.

3. *Temporary custody hearing.* Referring to the initial emergency hearing as the temporary custody hearing, Lillian and her mother and father argue that the department received such a hearing in this case.[15] Proceeding on the assumption that the initial emergency hearing was the temporary custody hearing contemplated by the statute, they rely on *Care & Protection of Manuel, supra*, to argue that once the department has chosen to pursue an emergency removal pursuant to § 24 and such removal is denied, temporary custody has been determined. Thus, they argue, the department is precluded from proceeding under § 25 for a temporary custody hearing. *Id.* at 532 ("§ 24 . . . and § 25 . . . provide alternative, mutually exclusive means of conducting a temporary custody hearing").

This argument fails because the second, nonjurisdictional part of G. L. c. 119, § 24, authorizes two separate hearings concerning temporary custody. The first is an initial hearing at which the party filing the petition for care and protection (in this case,

---

[14]It is true, as the younger children argue, that mental illness alone is not sufficient to remove a child from a parent's custody. *Adoption of Frederick*, 405 Mass. 1, 9 (1989). Although mental illness is a factor in determining whether to remove a child from a parent's custody, a child who is in danger of neglect or abuse can be removed even if a parent's mental illness is not the operative reason for the child's abuse or neglect.

[15]We have considered, but need not address, every argument Lillian and her mother and father have advanced in support of their interpretation of the statute.

the department) may seek an ex parte "emergency order" removing the children who are in immediate danger of harm for a period of seventy-two hours. G. L. c. 119, § 24. See R.L. Ireland, Juvenile Law § 109 (1993). See also *Custody of Lori*, 444 Mass. 316, 321 (2005) (§ 24 authorizes emergency removal of child at initial hearing); *Care & Protection of Manuel, supra* at 532-533 (removal of child prior to seventy-two hour hearing is by "emergency order"). "The threshold determination at an *initial removal hearing* is merely reasonable cause to believe the child is suffering from abuse or neglect; at that initial hearing, it is anticipated that further proceedings regarding the child's situation will be held promptly" (emphasis added). *Custody of Lori, supra* at 321. See *Care & Protection of Robert, supra* at 58.

The second hearing the statute contemplates is for temporary custody. If a child is removed on an emergency basis, the statute requires a temporary custody hearing within seventy-two hours. G. L. c. 119, § 24.[16] See *Custody of a Minor*, 389 Mass. 755, 761 (1983) (after emergency transfer, judge has authority to set hearing date for "possible extension of that order"). The standard of proof at the seventy-two hour temporary custody hearing under § 24 is a fair preponderance of the evidence. *Care & Protection of Robert, supra* at 68. "[A] primary function of the seventy-two hour hearing is to discover and correct any errors that may have occurred during the *initial* hearing, which, in the interest of expediency, most likely cannot be exhaustive" (emphasis added). *Custody of Lori, supra* at 321. The temporary custody hearing determines custody of a child until a hearing or trial on the merits of the case pursuant to § 26. *Care & Protection of Manuel, supra* at 531.

Once a party is afforded a temporary custody hearing under § 24, she is precluded from seeking a second temporary custody hearing under § 25. *Id.* at 528. However, temporary custody is not determined until there has been a full evidentiary hearing under § 24 (the seventy-two hour hearing) or § 25. *Id.* at 532.

---

[16]We note that there could be a situation where the Juvenile Court could conflate the two hearings, i.e., if an emergency removal hearing were held with the parents present and represented by counsel, and their due process rights met.

Here, there was no decision concerning temporary custody, a situation anticipated in our decision in *Care & Protection of Manuel, supra* at 532-533:

> "If, as occurred here, custody of the child has been transferred to the department by an emergency order of the court, the child and his parents . . . are entitled to a temporary custody hearing under § 24 within seventy-two hours of issuance of that emergency order . . . . *If, on the other hand, there has been no emergency custody order or emergency removal of the child, then the temporary custody hearing would be held pursuant to § 25.*" (Emphasis added.)

We see no reason to disturb this conclusion. Where no emergency order has entered, the department has not been awarded temporary custody, and thus § 25 is the appropriate provision under which the temporary custody hearing proceeds. *Id.* at 532, 534 (G. L. c. 119, § 25, like § 24, governed by fair preponderance of evidence standard). Our conclusion comports with the statute's purpose, over-all scheme, and jurisdictional requirements, as well as previous case law. "The object of a proceeding under G. L. c. 119, §§ 24-26, is to determine whether a child is in need of care and protection and, if so, to enter an appropriate order for the care and custody of the child." *Care & Protection of Benjamin,* 403 Mass. 24, 25 (1988). In addition, the very existence of the provision in § 25 allowing a judge to hold a temporary custody hearing on a nonemergency basis indicates that the Legislature realized that although a child may not be in such danger that immediate removal is necessary before the parties have notice and an opportunity to be heard, there still may be a need for the protection of a child until a hearing or trial on the merits pursuant to § 26 is completed. See *Care & Protection of Manuel, supra* at 533 ("In key respects a temporary custody hearing held under § 25 is identical to one under § 24"). It also comports with protecting the child's absolute right to be free from abuse or neglect. *Care & Protection of Robert, supra* at 62.

*Conclusion.* For the reasons stated above, we conclude that the petition in this case was sufficient and that the judge properly scheduled a hearing for temporary custody pursuant to

G. L. c. 119, § 25. The case is remanded to the county court where a judgment is to enter denying the mother's petition for relief pursuant to G. L. c. 211, § 3, vacating the stay, and remanding the case to the Juvenile Court for further proceedings consistent with this opinion.

*So ordered.*