NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-98

ADOPTION OF BROOKS (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a three-day trial, a Juvenile Court judge found the father unfit to parent Brooks and Mason and terminated his parental rights with respect to both children.[2]  On appeal, the father argues that the judge improperly shifted the burden of proof from the Department of Children and Families (department) to him on critical issues.  He also claims that the judge abused her discretion in not ordering posttermination and postadoption visitation.  We affirm.

The father submits that the judge's "language used ten times across five separate conclusions of law" demonstrates that

---

[1] Adoption of Mason.  The children's names are pseudonyms.

[2] On the first day of trial, the mother stipulated to the termination of her parental rights, and the judge approved her open adoption agreement with the preadoptive parents.  The mother also waived appeal.

the burden of proof was improperly shifted to him on the issue of parental fitness and on a number of subsidiary factual issues. While it is well settled that "before the State may deprive a parent of the custody of a child, the requirements of due process must be met" (quotation and citation omitted), Care & Protection of Robert, 408 Mass. 52, 58 (1990), no deprivation of rights occurred here.

Picking phrases from the judge's findings such as "Father was unable to demonstrate" or "Father has failed to show," the father argues that this language proves that the judge applied the wrong standard when considering the evidence. We are not persuaded. The department offered substantial evidence of the father's unfitness, including a history of domestic violence between the mother and the father, the father's limited compliance with department action plans, and the father's lack of bond and inconsistent visitation with the children. To rebut the department's case, the father offered evidence that the mother had fabricated the domestic violence allegations and that his criminal charges were a result of her "mental problem." The judge credited evidence of the father's participation in services, including completion of a batterer's program and a parenting course. The judge found, however, that the father had not benefited from his participation in services as he remained

unable to recognize his role in his domestic violence relationship with the children's mother.

In this context, the judge's findings on the father's failure to engage in or benefit from services were relevant to the ultimate issues of parental unfitness and the children's best interests. See, e.g., Adoption of Holly, 432 Mass. 680, 690-691 (2000) (father's unfitness established in part by "his failure meaningfully to engage in services offered by the department to help him become a fit parent"); Adoption of Bea, 97 Mass. App. Ct. 416, 427 (2020) (evidence of mother's "continued failure to accept or benefit from services" supported determination of mother's unfitness by clear and convincing evidence). "The judge's statements were summations of the evidence presented; read in context, they plainly do not refer to the ultimate burden of proof resting on the [father]." Adoption of Terrence, 57 Mass. App. Ct. 832, 836 (2003). Although some of the judge's findings are phrased in terms that could be viewed, in isolation, as burden shifting, it is clear from context that she was evaluating the department's evidence of the father's fitness as a parent, which necessarily included an assessment of whether he was able to benefit from the services the department offered to address his parental shortcomings. In addition, although we are concerned with the

substance of the judge's findings and not the number of times she used particular turns of phrase, we note that the judge did state five times that it was the department's burden to prove parental unfitness by clear and convincing evidence, and referenced the "clear and convincing" standard a total of nine times. See id. ("judge demonstrated her familiarity with proper standard" by references to "clear and convincing" language).

The judge's findings also support her determination that posttermination and postadoption visitation was not in the children's best interests. In making that determination, a judge must consider whether the child has a "significant, existing bond with the biological parent" and whether the child "has formed strong, nurturing bonds" with the preadoptive family. Adoption of Ilona, 459 Mass. 53, 63-64 (2011), quoting Adoption of Vito, 431 Mass. 550, 563 (2000). The children have not consistently resided with the father. The father's visits with the children were sparse and inconsistent since December 2021. Between April 2022 and April 2023, the father visited with the children only twice. At one point, the father expressly indicated to the department that he did not wish to have visits with the children. Thereafter, the father missed visits because he did not feel comfortable visiting with the children at the department office or with police present. While

the department social worker described the father's visits as having gone "pretty well," both children have expressed a desire not to visit with the father.  By contrast, the judge credited the testimony of a bonding expert who testified that, at the time of the trial, the children and foster parents were "very deep" into the bonding process and that the children had expressed their desire to stay in the preadoptive home.

The father argues that the judge failed to look beyond his lack of significant bonding with the children and to consider other factors, such as his ability to "provide unique insight into the [c]hildren's family history and their Haitian culture." While judges may consider a child's "racial and cultural development and adjustment" in determining whether a visitation order is in the child's best interests, Adoption of Vito, 431 Mass. at 567, such consideration must be based on "the particular needs and circumstances of the individual child in question," not on [g]eneralities about what may be in the best interests of some children." Id. at 566.  Here, the record fails to demonstrate that the children would feel alienated from their heritage or that the preadoptive family would deprive them of meaningful connections to their heritage.  Rather, the judge's findings reflect that the preadoptive parents are open to and have sought out Haitian cultural resources for the

children.  Moreover, the judge's decision to deny visitation was based on numerous other considerations besides the lack of bonding, including the children's wishes to stay in the preadoptive home and not to have visits with the father.

Only if posttermination and postadoption visitation with the biological parent is in the child's best interests does the judge proceed to evaluate whether entering an order instead of leaving visitation to the discretion of the adoptive family is necessary to protect the child's best interests.  See Adoption of Ilona, 459 Mass. at 64-66; Adoption of Vito, 431 Mass. at 563-564.  Because the judge determined that visitation with the father was not in the children's best interests, and the record amply supports this finding, the judge had no reason to make findings about whether the preadoptive parents would permit visitation and did not err in failing to do so.

Decrees affirmed.

By the Court (Massing, Walsh & Brennan, JJ.[3]),

Clerk

Entered:  December 27, 2024.

_____

[3] The panelists are listed in order of seniority.