# CARE AND PROTECTION OF SOPHIE & another.[1]

Suffolk. March 8, 2007. - May 9, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & CORDY, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Due Process of Law,* Child custody proceeding. *Evidence,* Child custody proceeding. *Parent and Child,* Care and protection of minor.

In the circumstances of a care and protection action in which a Juvenile Court judge awarded temporary custody of minor children to the Department of Social Services (department), following which a single justice of this court affirmed the decision, ruling that certain statements were properly admitted as evidence at the hearing, the children were entitled to review by the full court under G. L. c. 211, § 3, where the children demonstrated both that they were otherwise without a remedy and a substantial claim of violation of substantive rights, and where the statements at issue were the evidentiary foundation on which the department built its case. [103-105]

At a temporary custody hearing arising from a care and protection petition filed by the Department of Social Services (department), extrajudicial statements by minor children who were taking a position adverse to the department were not admissible as a matter of law as statements of a party opponent [105-110]; absent such evidence, and in the absence of a transcript of the temporary custody hearing and written findings of fact from the judge, this court remanded the matter to the Juvenile Court on the question of the sufficiency of admissible evidence to justify removal of the children from their home, to be determined by an adequate record [111].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 9, 2006.

The case was heard by *Cowin,* J.

*Andrew L. Cohen,* Committee for Public Counsel Services (*Michelle L. Grossfield,* Committee for Public Counsel Services, with him) for the children.

*Sherrie Krasner* for the father.

*Brian R. Pariser* for Department of Social Services.

SPINA, J. This is an appeal from a decision of a single justice

[1] Her sister.

denying relief sought by two children under G. L. c. 211, § 3. The Department of Social Services (department) filed a care and protection petition on October 11, 2006, alleging that the children were at risk of abuse and neglect by their parents. A Juvenile Court judge denied the department's emergency request, pursuant to G. L. c. 119, § 24, to place the children in its custody pending a hearing. As provided for in G. L. c. 119, § 25, a temporary custody hearing was held on October 16, 2006, with the children present in the court house. A judge in the Juvenile Court awarded temporary custody of the children to the department. The single justice affirmed that decision, ruling that out-of-court statements of the children introduced by the department during the hearing were admitted properly as statements of a party opponent. We reverse.

1. *Background.* The father, named as respondent[2] in the children's petition under G. L. c. 211, § 3, is the single parent of the two female children, now seven and eight years old.[3] The children have lived with their father for their entire lives and the whereabouts of their mother is unknown. The father ensured that the children always were clean, well dressed, up-to-date in their doctor visits and immunizations, and consistent in their attendance at child care. He also was engaged in the children's lives, attending all of their after-school events and showing interest in their activities. The father testified at the temporary custody hearing that he enjoyed being part of the children's lives and the children, through counsel, have expressed their desire to remain living with their father.

On July 12, 2006, the department received a report pursuant to G. L. c. 119, § 51A, indicating physical abuse and neglect of the two children. During the subsequent investigation, the department's social worker, Maria Gaffney, observed a bruise

[2]The father has argued the same position as the children throughout the proceedings.

[3]We are regrettably without the benefit of a transcript from the temporary custody hearing. The facts outlined in this opinion are thus drawn from the petition under G. L. c. 211, § 3, the opposition of the department to the petition, and the affidavits of trial counsel present at the temporary custody hearing. The witnesses who testified at the hearing were two social workers, Maria Gaffney and Sandra Pattinato, and the father.

on the right rear thigh of the younger child, purple in color and four inches in length. Gaffney testified that the child told her that her father hit her with a belt "for being bad" and that this was not the first time he hit her. Although the older child had no physical marks, she stated that her father also hit her at times. In addition, the children stated that they were sometimes afraid of their father. When Gaffney spoke to the father, he denied hitting his children but offered inconsistent explanations for the younger child's bruise.

After the supported report of abuse and neglect, the department assigned the case to an "ongoing social worker," Sandra M. Pattinato, for assessment. She testified that, although the father met with her three times, she generally believed him to be "less than cooperative" because he missed or rescheduled several appointments. On October 4, 2006, the department received another report of abuse and neglect. Responding to the children's day care center that same day, she observed three raised "welt marks" on the back of the younger child's thighs. Pattinato interpreted one of the marks to be a "slashing mark," three-to-four inches long and one inch wide. Another of the marks was circular in shape and three inches in diameter. Pattinato testified that the child told her that her father hit her with a soft belt for being noisy that morning. She also stated that her father often became angry and was "mean to her and her sister." When Pattinato questioned the older child, she denied that her father hit them at all.

Pattinato further testified that she, along with other department workers, went to the family home that evening and met with the father. He denied having any knowledge of marks on his daughter's legs or of hitting his children with a belt. Pattinato scheduled another appointment for a home visit on October 6, 2006. When Pattinato arrived at the house at the scheduled time, the family was not there. The father has resisted subsequent attempts by the department to contact and meet with him.

At the temporary custody hearing, the department was permitted, over objection of the children, to introduce the out-of-court statements of the children through the testimony of both Gaffney

and Pattinato.[4] The department also called the father to testify. The father explained that the July, 2006, marks on his daughter's legs were caused by their puppy's leash wrapping tightly around her leg and that he did not see the marks Pattinato claimed to be present on October 4, 2006. The father also testified that when Pattinato questioned him about the marks on his daughter's legs, he suggested that they take her to a hospital, but Pattinato did not respond. Last, the father testified that when he disciplined his children, he did so by "grounding them, giving them a time-out, or not buying them something at the store."

At the conclusion of the hearing, the department was granted temporary custody of the children pending a trial in the Juvenile Court on the merits. The children filed a petition with the single justice pursuant to G. L. c. 211, § 3, seeking relief from the Juvenile Court judge's award of temporary custody to the department.[5] The petition was denied and this appeal followed.

2. *G. L. c. 211, § 3.* General Laws c. 211, § 3, confers on this court the authority of "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided." We exercise this discretionary authority only sparingly, in exceptional circumstances where parties seeking relief "demonstrate both a substantial claim of violation of [their] substantive rights and error that cannot be remedied under the ordinary review process." *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990), quoting *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986).

The children argue persuasively that they are otherwise

---

[4]It does not affect our analysis that the objections to the extrajudicial statements were made by the children, rather than the father. See *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 795 n.4 (1985). The children's objections provided notice to the judge of a challenge to the evidence on the same basis subsequently argued on appeal.

[5]The department has moved to strike the appellate brief and appearance of the father before this court, noting that he did not file his own petition under G. L. c. 211, § 3, did not move properly to join the children's petition, and filed his notice of appeal from the decision of the single justice twenty-two days after it was handed down. This motion overlooks the fact that the father was named as a respondent in the G. L. c. 211, § 3, petition. The father is properly before the court on appeal as an appellee, though he filed a brief as an appellant. We choose to consider his brief.

without a remedy. As an initial matter, by operation of G. L. c. 231, § 118, there is no interlocutory avenue of appeal before the Appeals Court open to parties aggrieved by orders of the Juvenile Court. *Adoption of Iris*, 427 Mass. 582, 585 (1998). The children could obtain review of the Juvenile Court judge's decision after final judgment has entered, but the delay involved renders this option untenable. "Unless proceedings involving the custody of a minor are expedited, they fail to accomplish their purpose. Circumstances may change rapidly, and the harm sought to be avoided may worsen with the passage of time." *Custody of a Minor*, 389 Mass. 755, 764 (1983). Thus, although the children could await the outcome of the trial to appeal from the custody decision of the Juvenile Court, "certain substantive rights may not survive the delays inherent in the normal appellate process." *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue, supra* at 708.

We also agree that the petition raises a substantial claim of violation of substantive rights. The department argues that to accept this petition for review on its merits under G. L. c. 211, § 3, would expose the single justice to a torrent of petitions seeking to second-guess routine evidentiary rulings. This claim misunderstands the nature of the petition before the single justice as implicating only the right of the children to correct evidentiary rulings. At issue more fundamentally is the constitutionally protected interest of a parent in his relationship with his children. *Care & Protection of Robert*, 408 Mass. 52, 60 (1990), quoting *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3 (1979). Cf. *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue, supra* at 707 n.6 (noting that it was plaintiffs' personal substantive right to obtain abortion, rather than their right to preliminary injunction at issue). This interest has been recognized as a substantive right under the due process clause of the Fourteenth Amendment to the United States Constitution. *Care & Protection of Erin*, 443 Mass. 567, 570 (2005). Moreover, we previously have granted interlocutory review of Juvenile Court rulings of temporary custody under G. L. c. 119, §§ 23 (C), 24, and 25. See *Care & Protection of Lillian*, 445 Mass. 333 (2005); *Custody of Lori*, 444 Mass. 316 (2005); *Care & Protection of Manuel*, 428 Mass. 527 (1998);

*Care & Protection of Robert, supra.* As such, the single justice properly exercised her discretion under G. L. c. 211, § 3, in considering the petition.

Our decision does not imply that every evidentiary ruling made in the course of a temporary custody hearing provides grounds for a G. L. c. 211, § 3, petition. The particular evidentiary issue raised here was not merely the sort of routine evidentiary matter that inevitably occurs in the course of any adversary proceeding. Rather, the question here has not been raised before this court previously, and our ruling affects the course of many future temporary custody hearings. In the context of this hearing, the statements were the only direct evidence that the father hit his children, providing the central evidentiary foundation on which the department built its case. In this manner, the fundamental interest in family integrity was centrally implicated by the claimed evidentiary error. In reviewing future petitions seeking review of temporary custody decisions under G. L. c. 211, § 3, a single justice may exercise discretion in determining whether the evidentiary error complained of was significant enough to be potentially determinative of this fundamental interest and to justify consideration on the merits.

3. *Statement of a party opponent.* The single justice denied the petition, reasoning that the "statements at issue are admissible as statements of a party opponent." "Absent a clear abuse of discretion or plain error of law, we will not disturb the order of a single justice denying relief under G. L. c. 211, § 3." *Adoption of Iris, supra* at 586, citing *Department of Mental Retardation* v. *Kendrew*, 418 Mass. 50, 53 (1994).

It is well established under Massachusetts law that any extrajudicial statement by a party is admissible against that party if offered by a party opponent. See M.S. Brodin & M. Avery, Massachusetts Evidence § 8.6.1, at 501-502 (8th ed. 2007). It is beyond argument that the children are "parties" here. In both their brief and their oral argument, the children concede that they are parties. Children in care and protection cases also have the ability to exercise the rights of a party. See, e.g., G. L. c. 119, § 29 (right to counsel); G. L. c. 119, § 29B (right of appeal); *Care & Protection of Manuel, supra* at 532 (right to

request or waive hearing).[6] The next stage of inquiry is whether the children are "opponents" in the manner contemplated by our evidentiary tradition.[7]

The department argues that the statements are admissible here because the children, who are taking a position consonant with their father, are parties substantially adverse to the department. It is true, in some circumstances, that the admissibility of extrajudicial statements extends beyond party opponents in the pleadings sense to parties who take positions adverse to one another. *Flood* v. *Southland Corp.*, 416 Mass. 62, 71 (1993). See M.S. Brodin & M. Avery, *supra* at § 8.6.1, at 502 n.7. Thus, there can be little doubt that the contested evidence here is admissible as statements of party opponents against the declarants themselves, i.e., the children. See M.S. Brodin & M. Avery, *supra* at § 8.6.1, at 502 ("Any extrajudicial statement made by a party may be admitted in evidence *against that party* by an opponent . . ." [emphasis added]).

[6]The department emphasizes the availability of the children to testify as a basis for the admissibility of their extrajudicial statements. Availability is not a requirement for the admission of statements of a party opponent for the reason that a party is assumed to be able to offer their own evidence, and thus has the opportunity to explain their own statement offered against them. See M.S. Brodin & M. Avery, Massachusetts Evidence § 8.6.1, at 503 (8th ed. 2007); 4 J. Wigmore, Evidence § 1048, at 4-5 (Chadbourn rev. ed. 1972). Of course, child welfare cases require a judge to exercise special consideration as to the competency of child witnesses to testify. See M.S. Brodin & M. Avery, Massachusetts Evidence § 6.3, at 295 & n.12, quoting *Commonwealth* v. *Monzon*, 51 Mass. App. Ct. 245, 253 (2001). Cf. G. L. c. 233, § 82 (*b*) (5) (allowing evidence in sexual abuse cases of extrajudicial statements of young children found to be unavailable because testifying would be likely to cause severe psychological or emotional trauma). The issue of the availability of children to testify is thus subsumed by their status as parties, and does not factor in our ultimate decision of admissibility, as explained below.

[7]We disagree with the children's argument that this question is foreclosed by the marginal reference in *Adoption of Paula*, 420 Mass. 716, 726 n.12 (1995). In that case, we noted that information given by a child in the course of an investigation following a G. L. c. 210, § 3, petition could not be considered to be the statement of a party opponent as against her parent. Unlike the present controversy, Paula and her siblings took no formal position against either the department or their parents. *Id.* at 718-719 (describing parties' positions). The dicta referenced by the children stands only for the proposition that prior to a finding of parental unfitness, a child's interests should not be assumed adverse to her parent in light of their shared investment in family integrity. *Id.* at 726 n.12.

This does not end our inquiry, however. The question remains whether the extrajudicial statements of children taking a position adverse to the department are admissible against the parent claiming custody.

In *Flood* v. *Southland Corp.*, *supra*, the plaintiff was stabbed outside a convenience store. He brought a tort action against both the person who stabbed him (tortfeasor) and Southland Corporation, the owner of the property. *Id.* at 63-64. At issue in the case was the admissibility of the tortfeasor's guilty pleas in the corresponding criminal action, offered by Southland, to show that the stabbing was intentional. *Id.* The court affirmed the trial judge's exclusion of the guilty pleas on the basis that the evidence was inadmissible against the plaintiff and Southland failed to limit its offer to be against the tortfeasor alone. *Id.* at 71. In the present circumstances, the evidence similarly should have been disallowed against the father. Rule 801(d)(2) of the Proposed Rules of Massachusetts Evidence makes clear that its definition of nonhearsay extends only to the offer of an extrajudicial statement against the declarant.[8] See McCormick, Evidence § 262, at 777 (3d ed. 1984) ("If there are several parties on one side of the litigation, whether plaintiffs or defendants, the admission of one of these co-parties is admissible only against himself. It is not admissible merely by virtue of the co-party relationship against the other parties with whom he is aligned"). Moreover, the father and his children do not belong to that class of litigants whose statements may be imputed to one another through the concept of vicarious responsibility or agency, their present alignment in position notwithstanding.[9] See M.S. Brodin & M. Avery, *supra* at

---

[8]Rule 801(d)(2) of the Proposed Massachusetts Rules of Evidence reads, in relevant part: "*Statements which are not hearsay*. A statement is not hearsay if . . . [t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity . . . ."

[9]We find the children's citation to *In re Ty. B*, 878 A.2d 1255 (D.C. 2005), to be persuasive on this point. In that case, the District of Columbia Court of Appeals rejected the claim that an extrajudicial statement of one parent party in a custody hearing could be admitted against another parent party on the basis of privity. *Id.* at 1262 n.13, quoting 4 Jones, Evidence § 27.2, at 441 (7th ed. 2000), to note the rejection of the concept of admission by privity by courts interpreting the Federal Rules of Evidence. This result is consistent with Mass. R. Evid. 801(d)(2).

§ 8.6.6. The statements of the children could not be admitted properly in evidence against the father.

We now turn to the difficult question whether extrajudicial statements, admissible against the children, who are subjects of the petition, but not against the parent opposing the department, should be admitted in evidence in a temporary custody hearing. In a somewhat incongruous argument, the department claims that the admissibility of the evidence against the children justified its admission in the temporary custody hearing because of the central focus of the proceedings on the children's well-being. The children unquestionably have important interests to be determined in the care and protection process. Indeed, "the principal interest at stake is the child's immediate welfare." *Care & Protection of Perry*, 438 Mass. 1014, 1014 (2003). See *Care & Protection of Robert*, 408 Mass. 52, 61-62 (1990) (discussing child's interests in familial integrity and in freedom from neglectful or abusive conditions); *Custody of a Minor (No. 3)*, 378 Mass. 732, 744 (1979) ("The first and paramount duty is to consult the welfare of the child").

Yet, for the purposes of this evidentiary issue, it is important to note that the care and protection petition is not primarily intended to interfere with a right of the children to remain with their father.[10] Rather, it is the right of the father to retain custody that is imperiled. "[A]lthough the parent has an important interest in maintaining family integrity, the government interest is greater because it must '[protect] a child from the risk of serious and potentially irrevocable harm.' " *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 392 Mass. 738, 740-741

[10]To be sure, the care and protection process implicates the children's right to family integrity. See *Care & Protection of Robert*, 408 Mass. 52, 61-62 (1990). The care and protection statute, however, requires the petition to allege, as here applicable, that the children have a parent who is unwilling, incompetent, or unavailable to provide proper care, discipline, or attention. G. L. c. 119, § 24. If judicial inquiry reveals reasonable cause to believe that the children are suffering from serious abuse or neglect or are in immediate danger of serious abuse or neglect and that immediate removal is necessary to protect the children from serious abuse or neglect, the judge may transfer custody away from the parent and to the department or another appropriate caregiver. *Id.* The language of the statute is thus aimed at the parental right of custody.

(1984), quoting *In re Sabrina M.*, 460 A.2d 1009, 1017 (Me. 1983). In the contest of this litigation, the two parties wrestling for custody are the department, acting as parens patriae, and the natural father.[11] This posture is unaltered by the children's adoption of the legal position that their removal was not justified.[12]

We noted in *Flood* v. *Southland Corp., supra* at 71, that the general allowance of evidence admissible only against the tortfeasor, and not against the plaintiff, held potential to confuse the jury. The temporary custody hearing at issue here does not involve a jury as fact finder. Nevertheless, the possible confusion highlighted in the *Flood* case stems from the same principle of fairness that steers us away from allowing extrajudicial statements, admissible only against a father's children, to form the evidentiary basis of a judge's ruling to sever that father's custodial rights.[13] Stated differently, the answer turns on the fact

[11]The adversary character of this case can be contrasted with the possibility that "[a] child (below the age of eighteen) could file a care and protection petition on his or her own behalf (e.g., in a situation where the parents will not allow an adolescent to remain in the house, and the department claims that it cannot locate a foster home after the adolescent signs a voluntary request for services)." R.L. Ireland, Juvenile Law § 3.7, at 53 (2d ed. 2006). Nor is this a case where the issue of parental unfitness is uncontested and the department opts to use the more expeditious route of G. L. c. 119, § 23 (C). *Id.* at § 3.6, at 50 & n.26.

[12]It is fair to infer that this legal position is a result of either the children's expression of a desire to remain with their father, or their counsel's assessment that such an outcome was in their best interest after determining that the children themselves were "incapable of making 'an adequately considered decision.' " *Adoption of Nancy*, 443 Mass. 512, 519 (2005), quoting Committee for Public Counsel Services Assigned Counsel Manual, Standard 1.6(*d*) of the Performance Standards Governing the Representation of Children and Parents in Child Welfare Cases (2004). In determining custody, the wishes of the children are "entitled to weight," but are neither decisive, nor outcome determinative. *Adoption of Nancy, supra* at 518, quoting *Care & Protection of Georgette*, 439 Mass. 28, 36 (2003). This standard underscores the children's status as interested parties, rather than the adversary whose rights are sought to be abrogated in the care and protection process.

[13]Although the ruling here only mandates the custodial arrangement pending a full hearing on the merits, "there exists a 'substantial and impressive consensus' among experts in the field of child development that 'disruption of the parent child relationship carries significant risks' for the child." *Care and Protection of Robert, supra* at 59, quoting *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 588 (1981). The temporary nature of the Juvenile Court judge's ruling does not mitigate

that the statements are inadmissible against the father, rather than on the fact that they are admissible against the children.

Further, it is difficult to conceive of the probative worth of the extrajudicial statements when considered only against the children. In explaining the probative value of statements of a party opponent, Professor Wigmore propounds only two possibilities — first as a testimonial utterance, and second as a means of discrediting a position subsequently enunciated by the party, whether through his pleadings or through witnesses that support those pleadings.[14] See 4 J. Wigmore, Evidence 3-4 (Chadbourn rev. ed. 1972). As to the former, the affirmative testimonial value of the children's extrajudicial statements, offered by the department, cannot be segregated to prevent their consideration against the father's claim for custody. As for the latter, it must be noted that the children took no factual position at the hearing whatsoever, so far as revealed by the record. The children did not testify at the temporary custody hearing and filed no pleadings containing factual allegations. To the extent that the children enunciated a position during the temporary custody hearing, according to the affidavit of their counsel at the hearing it was only as to the ultimate legal conclusion; "counsel for the children advocated on behalf of the children that they be returned home to their father." The extrajudicial statements regarding the fact that their father hit them are not inconsistent with any factual position of the children and their admission could therefore not serve the probative end against the children of proving inconsistency.

The absence of probative value against the children and the issue of fairness both stem from the structure of this dispute as between the department and the father for custody of the children. In these circumstances, we cannot agree with the single justice as a matter of law that the extrajudicial statements of the children are admissible as statements of a party opponent.

the unfairness of admitting the extrajudicial statements in a hearing to determine custody.

[14]Of course there is no requirement of admissibility that the statement of a party opponent be contradictory or against his own interest. There is no need so to require "because no party offers thus his opponent's statement unless it does appear to be inconsistent." 4 J. Wigmore, Evidence 4 (Chadbourn rev. ed. 1972).

4. *Sufficiency of the evidence.* The crux of the children's appeal is that their removal was not justified absent the admission of their extrajudicial statements. Removal after a temporary custody hearing is appropriate if the judge finds there is a "fair preponderance of the evidence" that a child is "suffering from serious abuse or neglect or is in immediate danger of serious abuse or neglect and that immediate removal of the child is necessary to protect the child from serious abuse or neglect." G. L. c. 119, § 24. *Care & Protection of Robert, supra* at 68.

As noted above, the children have failed to provide us with a transcript of the temporary custody hearing, opting instead to base their statement of facts on affidavits from trial counsel, which they characterize as uncontested. In light of the absence of a transcript or written findings of fact from the judge, we are unable to assess the sufficiency of the remainder of evidence supporting the judge's decision. Cf. *Commonwealth* v. *Best,* 50 Mass. App. Ct. 722, 729 (2001) (outside context of child welfare case, appellant may be held responsible for failing to provide adequate transcript). The parties have not identified how the process contemplated in Mass. R. A. P. 8 (b) (5), 430 Mass. 1603 (1999), unfolded in this case, nor substituted a statement of the evidence, as allowed under Mass. R. A. P. 8 (c), as amended, 378 Mass. 932 (1978). We are left with no alternative but to remand this matter on the question of the sufficiency of admissible evidence to justify removal, to be determined on an adequate record.

5. *Conclusion.* The decision of the single justice is reversed with instructions to remand the matter to the Juvenile Court for prompt reconsideration of the temporary custody of the children in keeping with the principles set forth above.

*So ordered.*