CARE AND PROTECTION OF ZITA.

Suffolk. October 5, 2009. - November 4, 2009.

Present: MARSHALL, C.J., IRELAND, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Minor,* Care and protection, Custody, Temporary custody. *Parent and Child,* Care and protection of minor, Custody of minor. *Due Process of Law,* Child custody proceeding. *Department of Children and Families. Supreme Judicial Court,* Superintendence of inferior courts. *Juvenile Court.*

This court elected to exercise its general superintendence power under G. L. c. 211, § 3, to review a Juvenile Court judge's order granting temporary custody of a newborn infant to the Department of Children and Families following a so-called "seventy-two hour hearing," where the error could not be remedied under the ordinary review process and raised a substantial claim of violation of the substantive rights of the party seeking relief, and where the court's resolution of the claims presented would provide needed guidance for future cases. [277-279]

At the so-called "seventy-two hour hearing" in a care and protection proceeding, the Juvenile Court judge erred in considering a social worker's unsworn petition that commenced the care and protection proceeding, where the petition had not been admitted in evidence [279-281]; further, the judge, in reaching her conclusions, erred in relying on information she had gained from her participation in earlier care and protection proceedings involving the half-siblings of the child who was the subject of the present proceeding [281-284]; therefore, this court, conscious that the removal by the Department of Children and Families (department) of the child, a newborn infant, from her custodial parents implicated constitutional rights of the highest order, and being left with grave concerns that the department fell short of its statutory obligation in the seventy-two hour hearing of demonstrating that the newborn infant was in immediate danger of serious abuse or neglect and that immediate removal was necessary to protect her, ordered entry of a judgment in the county court vacating the Juvenile Court judge's order granting temporary custody of the infant to the department, and remanding the case for further proceedings to take place forthwith [284-285].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 17, 2009.

The case was heard by *Spina,* J.

*Mark A. Papirio (Timothy M. Kotfila* with him) for the child.

*Monica C. Murphy* for Department of Children & Families.

*Dorothy M. Storrow*, for the mother, amicus curiae, was present but did not argue.

*Catherine C. Sinnott*, Committee for Public Counsel Services, for the father, amicus curiae, was present but did not argue.

MARSHALL, C.J. In this care and protection case, a judge in the Juvenile Court awarded temporary custody of a newborn infant to the Department of Children and Families (department) following a so-called "seventy-two hour hearing." See G. L. c. 119, § 24. The infant, whom we shall call Zita, sought relief under G. L. c. 211, § 3, from a single justice of the county court, who denied her request. Zita appealed from the judgment of the single justice, and in an order issued pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001), we allowed her appeal to proceed in the regular course.[1]

Zita argues that in awarding the department temporary custody of her, the judge in the Juvenile Court improperly relied on facts and circumstances either inadmissible or not admitted in evidence at the seventy-two hour hearing, including (1) an unsworn petition prepared by a department social worker in connection with the department's ex parte request for immediate temporary custody of the infant, and (2) information the judge had learned from her acknowledged involvement in prior care and protection proceedings regarding the mother's two older children. For the reasons explained *infra*, we conclude that relief was warranted under G. L. c. 211, § 3. Because we are not confident that the judge would have reached the same conclusions without relying on the improperly considered facts, and because possibly significant intervening events may now be relevant, we remand the case for a prompt hearing to determine whether the department should retain temporary custody of Zita. See *Care & Protection of Benjamin*, 403 Mass. 24, 25 (1988).

1. *Background.* The basic factual background and procedural history is drawn from undisputed facts in the record. The department first became involved with the mother, who has two other

---

[1]Neither the mother nor the father were parties to the petition before the single justice and are not parties to this appeal. Their joint motion to join this appeal was denied by the single justice. The mother and father have each filed amicus briefs that, in light of our resolution of Zita's appeal, we need not consider.

children, in December, 2006, when she allegedly failed to follow through with her son's prescribed care after he was released from a psychiatric hospitalization.[2] The two children were later removed from the mother's custody for reasons we need not detail. On May 23, 2008, the two children were found in need of care and protection and committed to the permanent custody of the department in accordance with a stipulation of the parties.

On December 18, 2008, two days after Zita was born, and prior to any judicial involvement, the department took emergency custody and removed her from her mother's care.[3] The department had in fact decided three months earlier to seek temporary custody of Zita when she was born based, it would appear, solely on the department's view of the mother's inadequate parenting of her two older children.[4] The department did not provide notice to the mother before removing Zita.

a. *The initial ex parte hearing.* On December 19, 2008, the department filed a petition seeking to retain emergency custody of Zita. See G. L. c. 119, § 24.[5] The petition was an unsworn

---

[2]The mother has three children. Zita is the youngest. The mother's son is nine years old, and her other daughter is seven years old.

[3]The Department of Children and Families (department) may take a child into immediate temporary custody in the absence of a care and protection proceeding provided that the department "has reasonable cause to believe that the removal is necessary to protect the child from abuse or neglect." G. L. c. 119, § 51B (*c*). In such cases, the department "shall make a written report stating the reasons for such removal and shall file a care and protection petition under section 24 on the next court day." *Id.* See C.P. Kindregan, Jr., & M.L. Inker, Family Law and Practice § 65:1, at 294 (3d ed. 2002).

[4]It appears that Zita was born full term and healthy and had no special needs; that neither Zita nor the mother tested positive for any illicit substances following the birth; that the mother had attended all of her appointments for prenatal care; and that Zita's pediatrician wrote a supportive letter to the department on the mother's behalf.

[5]A judge in the Juvenile Court may conduct an ex parte hearing to determine whether to grant an emergency petition to obtain custody of a child. G. L. c. 119, § 24. See *Care & Protection of Lillian*, 445 Mass. 333, 340-341 (2005). General Laws c. 119, § 24, as appearing in St. 2008, c. 176, § 84 (effective July 8, 2008), provides in relevant part: "If the court is satisfied after the petitioner testifies under oath that there is reasonable cause to believe that (i) the child is suffering from serious abuse or neglect or is in immediate danger of serous abuse or neglect; and (ii) that *immediate removal* of the child is necessary to protect the child from *serious abuse or neglect*, the court may issue an emergency order transferring custody of the child for up to 72 hours to the department . . . ." (emphases added). See *Care & Protection of Robert*, 408 Mass. 52, 57 (1990).

letter prepared by a social worker in the department before Zita's birth, detailing the department's history with the mother and its reasons for seeking temporary custody of the mother's newborn infant (the petition).[6] The petition is all but devoid of any reference to the mother's pregnancy, the circumstances of Zita's birth, or Zita's actual care since her birth.[7] The same judge in the Juvenile Court who presided in the proceedings concerning the mother's two older children also presided at the ex parte hearing regarding Zita. See *Care & Protection of Robert,* 408 Mass. 52, 57 (1990) ("Due to the need for expedition in this type of proceeding, the emergency hearing, much like a hearing for a temporary restraining order, may be held ex parte"). The hearing was brief: the social worker who had prepared the unsworn petition testified in summary form about the department's history with the mother and the department's present concerns.[8] The judge granted the department's petition for custody of Zita and scheduled a hearing pursuant to G. L. c. 119, § 24, for December 23, 2008, four days later. The judge also appointed counsel for Zita, the mother, and the putative father.[9]

b. *Seventy-two hour hearing.* Where, as here, a child is re-

[6]We are informed that in some counties in the Commonwealth it is the practice of the department — preferable in our judgment — to submit a sworn affidavit of a social worker in support of a request for emergency removal of a child, together with a petition. In this case the unsworn petition was accompanied only by (1) a "care and protection intake sheet" listing the name, address and telephone number of the petitioner (the social worker), the names and addresses of Zita's mother and of her father, and the name, date of birth, and sex of the child, and indicating that the child had been placed in foster care; and (2) an "affidavit disclosing care or custody proceedings," signed by the social worker, to the effect that she did not know of any other care or custody proceedings involving Zita.

[7]Concerning "current circumstances" the petition states that the mother has been "without stable housing[,] . . . is currently residing with 'friends' about whom the [department] know nothing[,] presents as emotionally immature and unstable which prevents her from understanding her children's needs and addressing [the department's] concerns in a genuine manner. . . . [The mother] exhibits a lack of personal responsibility which undermines her efforts to ameliorate existing issues," and that the department "has considerable concerns regarding [the mother's] ability to safely and appropriately care for her infant daughter."

[8]The transcript of the social worker's testimony is six pages, double spaced. The unsworn petition she signed before the ex parte hearing is eight pages, single spaced.

[9]See note 11, *infra.*

moved from her parent on an emergency basis, G. L. c. 119, § 24, mandates a temporary custody hearing within seventy-two hours to determine whether temporary custody shall continue until a hearing on the merits of the petition for care and protection.[10] See *Care & Protection of Lillian*, 445 Mass. 333, 341 (2005). A "primary function" of the seventy-two hour hearing is "to discover and correct any errors that may have occurred during the initial hearing, which, in the interest of expediency, most likely cannot be exhaustive." *Custody of Lori*, 444 Mass. 316, 321 (2005). On December 23, 2008, the judge held the seventy-two hour hearing mandated by G. L. c. 119, § 24. The department, the child, the mother, and the father were each represented by counsel.[11] The social worker[12] and the mother testified. No exhibits were offered or admitted in evidence.

At the commencement of the hearing, the mother (but not the child) stipulated to certain information concerning the care and protection of her two older children, specifically that "there is a history" with the department, that her eldest child (her son) was in the custody of the department, that the goal for him was adoption, and that a trial had been scheduled in his case for spring of 2009. As for her middle child, the mother stipulated that her daughter had been placed in her father's custody. In so stipulating, the mother's counsel explained that he "would not like a lot of these facts to come in to prejudice that case [the son's] at this particular hearing," and that facts concerning the mother's two older children "are really not basically relevant to my client's ability to take care of the new child." The judge responded by noting that "the law says that parenting other children is certainly

[10]General Laws c. 119, § 24, provides in relevant part that, on "entry of the order" giving the department emergency custody at the ex parte hearing, "notice to appear before the court shall be given to either parents, both parents, a guardian with care and custody or another custodian. At that time, the court shall determine whether temporary custody shall continue beyond 72 hours until a hearing on the merits of the petition for care and protection is concluded before the court."

[11]Zita's father attended the hearing, but did not testify. He had not yet established paternity of Zita. His counsel stated that he intended to do so through genetic marker testing. We take judicial notice of the docket in the Juvenile Court to the effect that the father's paternity has now been established.

[12]Counsel for Zita pointed out that the social worker is the sister of counsel for the department at the temporary custody hearing, but makes no claim of any conflict.

relevant" to a proceeding involving another child of the parent, and that the petition in this case was "issued in the context of those parenting issues and that they are very relevant."[13] She stated that she expected that "certain pieces" of evidence about the mother's parenting history with respect to her two older children were *"going to be offered* as context and as past," and that "as a practical matter" she knew that case, was "sitting on that case," was "quite familiar with it," adding "so let's proceed and see how we do and maybe [counsel for the mother] can object" (emphasis added).

At the close of the hearing, the judge ruled that the department had met its requisite burden of showing by a fair preponderance of the evidence that Zita was "at imminent risk of harm and or neglect and abuse were she to remain in the custody of her mother,"[14] ordered that Zita remain in the department's custody pending a hearing on the merits. At Zita's request, on January 26, 2009, the judge issued findings of fact and conclusions of law, explaining in part that "[b]ased upon" the mother's stipulation, the "Petition Letter filed in the case before the Court," and on her own "active participation in the prior open protective case," she found the mother's "protective history concerning her two older children both relevant and prognostic with regard to the child who is the subject of the seventy-two hour hearing."

2. *Review under G. L. c. 211, § 3.* We exercise our general superintendence power under G. L. c. 211, § 3, in exceptional circumstances only. We exercise the power "sparingly," *Care & Protection of Sophie*, 449 Mass. 100, 103 (2007), and only when the party seeking relief demonstrates both "error that can-

---

[13]See *Adoption of Diane*, 400 Mass. 196, 204 (1987) (evidence of prior parental neglect relevant to current parental fitness); *Custody of Two Minors*, 396 Mass. 610, 619 (1986) (affirming judge's decision that parents were unfit in part because *"evidence* of incidents of past abuse or neglect suffered by the older child was undisputed" [emphasis added]). .

[14]At a hearing pursuant to G. L. c. 119, § 24, a judge must find by a "fair preponderance of the evidence" that there is "reasonable cause to believe" that the child is in "immediate danger of *serious* neglect" and that "immediate removal" is necessary to protect the child from such harm (emphasis added). *Care & Protection of Robert*, 408 Mass. 52, 55-56, 68 (1990). Because the judge did not find that Zita was in immediate danger of *serious* harm or neglect, she argues that the judge applied the wrong standard. In light of our disposition of this case, we need not address the point. We caution that, on remand, the judge should apply the correct standard.

not be remedied under the ordinary review process" and a "substantial claim of violation of [her] substantive rights." *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990), quoting *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986).

In *Care & Protection of Sophie, supra* at 103-104, we recognized that a parent or child aggrieved by an order of the Juvenile Court granting temporary custody to the department following a seventy-two hour hearing, pursuant to G. L. c. 119, § 24, may not have an adequate remedy other than through G. L. c. 211, § 3. Interlocutory review in the Appeals Court, pursuant to G. L. c. 231, § 118, is not available where an order of the Juvenile Court is concerned, and waiting for review of the judge's ruling until a final judgment has entered after trial is often not adequate because of the delay involved, and because of the potentially devastating effect on the constitutionally protected parent-child relationship in the interim. *Id.* See *Care & Protection of Robert*, 408 Mass. 52, 67 (1990).

Even in the absence of an adequate alternative remedy, however, review on the substantive merits pursuant to G. L. c. 211, § 3, is not automatic. A petitioner must also demonstrate that the temporary custody order raises a substantial claim of violation of her substantive rights. *Care & Protection of Sophie, supra* at 103. Zita argues that the judge in the Juvenile Court relied impermissibly on the petition and other information about the mother that the judge had obtained when she presided in the earlier care and protection cases, not in evidence. As we explain *infra*, the judge erred, and therefore violated Zita's substantive rights, in both respects: her reliance on the petition that was not in evidence, and her reliance on her recollection of the facts of the earlier proceedings involving the other children.

We pause briefly to reemphasize an additional point made in *Care & Protection of Sophie, supra*, that not every interlocutory ruling made in the course of a temporary custody hearing provides ground for review under G. L. c. 211, § 3. We addressed the merits of the petitioner's claim in that case because the issue presented was novel, and because our decision would affect "the course of many future temporary custody hearings." *Id.* at 105. Likewise, in this case, the claims are significant not only for these parties, but also because our resolution of them will provide

needed guidance for future cases as well. Zita's claims involve a recurring situation that judges in the Juvenile Court face when they have presided over related cases involving a parent's other children. The claims thus give this court an opportunity to address a matter of systemic importance that has previously been addressed principally by the Appeals Court. See, e.g., *Care & Protection of Isabelle*, 33 Mass. App. Ct. 548, 549-551 (1992).

We now turn to review of the substantive merits of Zita's claims, to determine whether the single justice committed a clear error of law. *Adoption of Iris*, 427 Mass. 582, 586 (1998) ("Absent a clear abuse of discretion or plain error of law, we will not disturb the order of a single justice denying relief under G. L. c. 211, § 3").

3. *The evidentiary challenges.* a. *The petition.* Zita does not contend that it was impermissible for the judge to consider the unsworn petition at the ex parte emergency hearing on December 19, 2008. Her focus is on the seventy-two hour hearing conducted on December 23, 2008. She contends that the judge erred at that stage in relying on the petition because it was not admitted in evidence nor could it have been because, she claims, the petition is nothing more than a pleading. However characterized, we conclude that it was improper for the judge to consider the contents of that document in determining whether to extend temporary custody to the department until a full hearing on the merits.[15]

In a care and protection proceeding, evidence is "admissible according to the rules of the common law and the General Laws." G. L. c. 119, § 21A.[16] See *Care & Protection of Sophie*, *supra* at 105-110 (discussing evidentiary rulings in context of

---

[15]In proceedings before the single justice, the department recognized that the petition was "a pleading." Here the department proceeds as if the petition is a "report" as required by G. L. c. 119, § 51B (*c*). See note 3, *supra*. We need not resolve the issue because the judge, in any event, should not have relied on the document in finding her facts or reaching her conclusions.

[16]General Law c. 119, § 21A, provides in pertinent part: "Evidence in proceedings under [§ 24] shall be admissible according to the rules of the common law and the General Laws and may include reports to the court by any person who has made an investigation of the facts relating to the welfare of the child and is qualified as an expert according to the rules of the common law or by statute or is an agent of the department . . . ."

temporary custody hearings); *Care & Protection of Benjamin*, 403 Mass. 24, 27 (1988), quoting *Custody of Two Minors*, 19 Mass. App. Ct. 552, 556-557 (1985).[17] A judge may not rely on facts that are not properly admitted in evidence. See *Adoption of Helen*, 429 Mass. 856, 863 (1999) (judge should not have cited oral proffers of department attorneys or affidavit of department attorney because neither was admitted in evidence); *Care & Protection of Benjamin, supra* ("the judge could not properly consider facts not in evidence").

Even if the petition is considered a "report" and the department had sought to introduce it, the entire document could not have been admitted. Subject to specific limitations, reports prepared by the department's "investigation of the facts relating to the welfare of the child" may be admitted in evidence at the discretion of the judge. G. L. c. 119, § 21A. See *Care & Protection of Bruce*, 44 Mass. App. Ct. 758, 765-766 (1998). The limitations are clear. First, the reports must "be limited to a statement of facts, or redacted to exclude opinion, diagnosis or evaluation." *Id.* at 766, and cases cited. Second, the opposing parties "must be able to cross-examine the author of the report, should they request so to do." *Id.*

Notwithstanding this settled law, the department argues that the judge properly relied on the petition because the parties (1) had copies of the petition, (2) were aware that the judge would consider the petition, and (3) were given ample opportunity to cross-examine the social worker and rebut the contents of the petition. We note preliminarily that Zita's counsel did not use that document in any respect during the hearing.[18] As to Zita, therefore,

[17]See R.L. Ireland, Juvenile Law § 3:24, at 165 (2d ed. 2006): "[F]or purposes of evidentiary rulings the Legislature intended that trials on the merits of care and protection petitions are to be conducted with the same formality, and the same adherence to the rules of evidence, that governs other categories of litigation not involving juries." Moreover, " 'an extra measure of evidentiary protection' is warranted, and should be afforded to the natural parents, when the breakup of a family is threatened." *Id.* at 166, quoting *Custody of a Minor (No. 1)*, 377 Mass. 876, 884 (1979).

[18]The transcript of the seventy-two hour hearing reveals that the mother's counsel referred to the petition during cross-examination of the social worker and that the father's counsel referred to the petition only in making an objection to the department's questioning of the mother.

the department's attempt to negate the evidentiary requirement for the admission of and use of such reports falls short. More important, however, even if, as the department argues, Zita had "ample opportunity" to do so, or even if Zita had in fact cross-examined the social worker concerning the petition, our conclusion would be no different. The petition was not in evidence, and had the department attempted to introduce it, it would have been required to conform to the limitations of *Care & Protection of Bruce, supra*. That did not happen.

The department's reliance on *Custody of Two Minors*, 19 Mass. App. Ct. 552 (1985), and other cases concerning the reports of court-appointed investigators prepared pursuant to G. L. c. 119, § 24, are not pertinent. General Laws c. 119, § 24, states that "the court shall appoint a person qualified under section 21A to investigate the conditions affecting the child and to make a report under oath to the court, which shall be attached to the petition *and be a part of the record*" (emphasis added). Accordingly, the Appeals Court has held that there is "no question that § 24 anticipates use of the report by the trial judge." *Custody of Two Minors, supra* at 559. In that case the mother had notice of the statutory status of the report, was given a copy of the report, and "had ample opportunity to rebut its contents." *Id.* See *Custody of Michel*, 28 Mass. App. Ct. 260, 265 (1990) ("By the terms of § 24, the investigator's report is part of the record in the case. There can, therefore, be no objection in general to the receipt and use of such reports in arriving at decisions in care and protection proceedings"). Here the petition letter was not prepared by a court-appointed investigator pursuant to G. L. c. 119, § 24; it was an unsworn petition filed by a social worker that commenced Zita's care and protection proceedings. The judge should not have relied on its contents.

b. *The judge's "active participation" in related cases.* Zita further argues that the judge erred in reaching her conclusions by relying on information she had gained from her "active participation" in the earlier care and protection proceedings involving Zita's half-siblings. Here, too, we agree.[19]

It was improper for the judge to take "notice," judicial or

---

[19]The mother's stipulation at the seventy-two hour hearing, described *supra*, did not encompass all the facts or details ostensibly established in the older children's care and protection cases.

otherwise, of facts learned while presiding over the earlier care and protection cases of Zita's half-siblings.[20] "While a judge may take judicial notice of the fact that he sat on a related case and also may take judicial notice of the docket entries in the prior case," *Howe* v. *Prokop*, 21 Mass. App. Ct. 919, 920 (1985), citing *Morrison* v. *Krauss*, 353 Mass. 761 (1968), "he may not judicially notice 'facts or evidence brought out at the prior hearing.' " *Howe* v. *Prokop, supra*, quoting *Ferriter* v. *Borthwick*, 346 Mass. 391, 393 (1963). See *Ferriter* v. *Borthwick, supra* (judge "could not act upon his private knowledge of particular facts which are not a matter of common knowledge or observation"); Mass. G. Evid. § 201(b) (2008-2009).[21]

In the absence of issue preclusion or a statute providing for their admissibility, findings in one proceeding are not evidence in a different proceeding, and cannot constitute "proof of the facts found" in the second proceeding. *Care & Protection of Isabelle*, 33 Mass. App. Ct. 548, 550 (1992). In *Care & Protection of Isabelle, supra*, as here, "[t]he prior proceeding involved other children and the issue was different: whether the mother was fit to care for the . . . children named in that petition, not whether she was fit to care for the one child named in this petition."

The department relies on *Adoption of Paula*, 420 Mass. 716 (1995), in which this court stated: "When a parent's living situation has changed, a judge nonetheless properly may rely on evidence of past parental abuse or neglect to the extent that this evidence has relevance to current parental fitness." *Id.* at 729. The reliance is misplaced: that case concerned the same mother, the same child, and a change in the mother's living situation in the midst of the same proceedings. Moreover, in that case the judge's findings had "clear support in the record." *Id.* at 730. See *Adoption of Diane*, 400 Mass. 196, 204 (1987) (when prop-

---

[20]The judge did not state that she was taking "judicial notice" of facts she had learned from the earlier proceedings. However, because some of the facts recited in her findings were not in evidence, we assume that this is essentially what she did. The parties frame their arguments around this concept.

[21]Section 201(b) of the Massachusetts Guide to Evidence (2008-2009) provides that a judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned."

erly admitted in evidence, mother's prior history of parental neglect relevant to present fitness). It is the commingling of facts, some of which were in evidence in this proceeding and some of which were not, that gives rise to the difficulty here.

We recognize the challenges that confront a judge who has presided over a case that is closely related to a new proceeding; it may be impossible to erase a judge's memory of the prior case. But each party is entitled to an impartial magistrate and a decision based on the evidence presented *in her case*. It is permissible, and may be advisable, for a judge to acknowledge her role in related cases, as happened here. See *Howe* v. *Prokop*, *supra*. But she must be "most scrupulous" to maintain her "unfamiliarity with disputed matters" that may come before her. *Furtado* v. *Furtado*, 380 Mass. 137, 151 (1980). Our review of the record reveals that in this case the judge did not adhere to the confines of *Howe* v. *Prokop*, *supra*, but strayed into areas forbidden by *Care & Protection of Isabelle*, *supra*.

The department contends that the judge took "judicial notice" only of the *disposition* in the siblings' cases, and that the mother's history of parenting her two older children had "prognostic value." The department further contends that, assuming the judge did rely improperly on facts she learned from the earlier care and protection proceedings, her findings were in any event supported by other evidence taken at the seventy-two hour hearing, so that any error is harmless. A comparison of the transcript of the seventy-two hour hearing with the judge's findings belies this point; the judge's findings extend beyond even a liberal reading of the testimony of the social worker.[22] The department did offer some evidence concerning the mother's past behavior, but, as conceded at oral argument and as is evident from the

---

[22]In addition, some of the judge's findings do not accurately reflect the testimony at the seventy-two hour hearing, further suggesting that she was relying on information gleaned from the earlier proceeding. For example, the judge concluded that Zita's putative father, who would be living with Zita and the mother, was "unknown" to the department, except that he was engaged in a domestic dispute that he had with a former girl friend. The social worker, however, had met the putative father during a home visit and, after obtaining his consent, conducted a "CORI check" to obtain his criminal record. Second, the judge found that the mother's second child disclosed to her therapist that she had been sexually abused by the mother's former boy friend. The evidence on this point was, after objection, not admitted for all purposes.

transcript, the social worker did not testify in great detail regarding the mother's history. A reasonable inference is that the judge based her findings, at least in part, on either her knowledge from presiding at the earlier care and protection case of Zita's half-siblings or facts contained in the petition that was not in evidence. The judge's reliance on such facts permeated her findings and ultimate conclusion to award temporary custody to the department. Consequently, it is "impossible for this court to say with confidence that the result would have been the same if the judge had not considered that evidence." *Care & Protection of Benjamin*, 403 Mass. 24, 27-28 (1988).[23]

4. *Conclusion.* Zita's removal by the Commonwealth from her custodial parent implicates constitutional rights of the highest order. See *Care & Protection of Sophie*, 449 Mass. 100, 103-105 (2007). When we strip from the decision below the information contained in the petition, which was not in evidence, and information the judge may have learned from the earlier care and protection cases, also not in evidence, we are left with grave concerns that the department fell short of meeting its statutory obligation of demonstrating that the newborn infant was in "immediate danger of serious abuse or neglect" and that "immediate removal" was necessary to protect her. *Care & Protection of Robert*, 408 Mass. 52, 57 (1990). We add this observation: careful judicial review of the department's actions based on evidence before the judge in a proceeding concerning a particular child (and no other proceeding) is crucial because of the constitutional rights of both mother and child. The availability of emergency hearings is not an invitation to the department or a judge to ignore the rules of evidence or overlook the burdens of proof to meet the statutory grounds for temporary removal of a child from her parent.

Much time has passed since Zita was taken from her mother, time that is formative in the life of an infant. The judgment entered in the county court denying the petition is reversed. A new judgment is to enter allowing the petition, vacating the

---

[23]Separately, Zita argues that the department failed to make reasonable efforts to keep the family together, as required by statute. See G. L. c. 119, § 29C (mandating that when judge grants custody of child to department, judge "shall determine whether the department or its agent, as appropriate, has made reasonable efforts . . . to . . . eliminate the need for removal from the home"). Because of our resolution of the case, we need not reach the issue. On remand any party may raise the issue.

Juvenile Court judge's order, and remanding the case for further proceedings consistent with this opinion. The proceedings shall take place forthwith in light of the passage of time since the seventy-two hour hearing.

*So ordered.*