NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1218

ADOPTION OF USHA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from a decree issued by a Juvenile Court judge finding her unfit to parent her daughter, Usha, terminating her parental rights, and denying her request for posttermination and postadoption visitation.[2]  We affirm.

Background.  The mother had prior extensive involvement with the Department of Children and Families (department) regarding her four older children when she learned in June 2021 that she was pregnant with Usha.  In 2021, the mother's parental rights to her older children were terminated.  The mother, who struggled with substance use disorder, used illicit substances throughout her pregnancy with Usha.  She also had diagnoses of

---

[1] A pseudonym.

[2] The father moved to dismiss his appeal with prejudice, which we allowed.  Accordingly, we consider only the mother's appeal.

anxiety, depression, attention deficit hyperactivity disorder, bipolar disorder, and posttraumatic stress disorder.

Usha was born in March 2022 and hospitalized for twenty-four days after she tested positive for methadone and amphetamines.[3]  One day after Usha's birth, a mandated reporter filed a report alleging that she was a substance exposed newborn.  The department assumed emergency custody of Usha the next day.  The department then filed a petition alleging Usha was in need of care and protection.

Although the department initially identified a goal of adoption for Usha the following month, it accepted the judge's subsequent order for a goal of reunification.  After discharge from the hospital, Usha was placed with a foster family in a home with one of her half-brothers.

The department updated the mother's action plan, requiring her to engage in therapy, take steps to prevent future intimate partner violence, maintain appropriate housing, and refrain from criminal activity and substance misuse.  However, since Usha's birth, the mother struggled to meet these objectives.

From June 2022 to March 2023, the mother tested positive for cocaine multiple times, which resulted in her being discharged from treatment programs and incarcerated.

---

[3] The mother was prescribed methadone and Adderall.

Consequently, the mother did not maintain stable housing during this time.  The mother also did not consistently engage in therapy or take steps to protect herself from domestic violence from Usha's father.

After Usha's removal, the department initially offered the mother biweekly visits for two hours.  After sixty days, the department increased those visits to every week for two hours.  However, due to multiple cancellations, the mother only had nine visits with Usha in the thirteen months the department had custody of her leading up to trial.  In February 2023, the department filed a petition to change Usha's goal to adoption.  Following a trial in April 2023, the judge issued a decree finding the mother unfit and terminating her parental rights.  The judge also denied the mother's requests for posttermination and postadoption visitation with Usha.

Discussion.  1.  The judge's reliance on prior findings and conclusions of law.  The mother argues that the judge improperly relied on findings and conclusions of law from a prior proceeding involving her older children.  However, the mother did not object to their admission as an exhibit and therefore waived this argument on appeal.[4]  See Adoption of Kimberly, 414 Mass. 526, 534-535 (1993).

---

[4] Consequently, the department was not on notice that the mother wanted to challenge the prior findings and conclusions of

3

Even if we reached the merits of the mother's argument, the judge's reliance on the prior findings was not improper. "Generally, recent findings from a prior care and protection decision are admissible in a later care and protection or termination proceeding when such findings are relevant and material and made during a proceeding in which the parents had a compelling incentive to litigate." Adoption of Darla, 56 Mass. App. Ct. 519, 520-521 (2002). Here, the prior findings were recent, as they were issued just over one year before the trial in this proceeding. They were also relevant and material, as they detailed the mother's history of instability and previous relationship with the department. Finally, the prior findings were made during a proceeding which the mother had a compelling incentive to litigate, and in fact did litigate. Therefore, there was no error.[5] See id.

Even if admission of the prior findings was error, the mother was not prejudiced. Ultimately, the judge based her decision on the mother's significant and ongoing challenges with

law and therefore did not submit the underlying exhibits in support of those findings.

[5] The mother's reliance on Care & Protection of Zita, 455 Mass. 272 (2009), is misplaced because here, the judge did not take judicial notice of the findings. See id. at 273, 278. Instead, the findings became record evidence when they were admitted as evidence at trial.

substance use, mental health issues, domestic violence, criminal activity, and housing instability.  Other evidence in the record supported the judge's conclusion of unfitness.[6]

2.  51A reports.  The mother argues that the judge's reliance on old 51A reports briefly referred to in a 51B investigation to establish her prior history with the department went beyond its admissibility to "set the stage."  See Adoption of Querida, 94 Mass. App. Ct. 771, 778 (2019).  The mother, however, did not object to the admission of the 51B investigation and therefore waived this argument on appeal.  See Adoption of Kimberly, 414 Mass. at 534-535.

In any event, the mother did not establish that the trial judge's use of the 51A reports was for any purpose other than to set the stage, and he appropriately noted when a 51A report was screened out.  See Adoption of Querida, 94 Mass. App. Ct. at 778 (judge's findings made "clear" that 51A reports were used to set stage where they were described as allegations and referenced only in section titled "DCF Involvement").  We discern no error.

3.  Posttermination and postadoption visitation.  The mother argues that the judge erred in not ordering posttermination or postadoption visitation.  We disagree.  The

_____

[6] We acknowledge and encourage the mother's efforts to pursue sobriety.  Although she was found unfit, this does not mean she does not love the child.  See Adoption of Bianca, 91 Mass. App. Ct. 428, 432 n.8 (2017).

5

record does not reflect a significant bond between the mother and Usha that would warrant posttermination or postadoption contact.  See Adoption of Rico, 453 Mass. 749, 759 (2009).  At the time of trial, Usha was thirteen months old and had lived with her preadoptive family her whole life and had developed a loving relationship and bond with them.  Usha only had nine visits with the mother during this time.

To the extent the mother speculates that Usha might become confused when she someday learns that her half siblings have visitation with the mother while she does not, we discern no error.  It would be inappropriate for a judge to speculate as to "some hypothetical dynamic between parent and child," such as this.  Adoption of Vito, 431 Mass. 550, 565 (2000).  Should Usha someday become confused, her adoptive parent will be in the best position to decide which course of action to take.  See id.

Decree affirmed.

By the Court (Henry, Sacks & Singh, JJ.[7]),

Clerk

Entered:  March 27, 2025.

---

[7] The panelists are listed in order of seniority.

6